Opinion
 

 SILLS, P. J.
 

 Blue Lagoon Community Association (the Association) petitioned the superior court pursuant to Civil Code section 1356 for an
 
 *474
 
 order approving two amendments to the Association’s declaration of covenants, conditions and restrictions (CC&R’s) that had received approval from a majority of the members, but had not received the supermajority vote required by the declaration.
 
 [1]
 
 Section 1356 permits the superior court to reduce the percentage of affirmative votes necessary to amend a declaration where the property owners’ association is unable to obtain approval of the proposed amendments by the percentage of votes required by the declaration.
 

 The amendments proposed by the Association were controversial and had been the subject of an intense political battle within the Association. Therefore, when the petition was filed several members of the Association (the objectors) hired an attorney and filed opposition to it.
 
 [2]
 
 Other members opposed to the proposed amendments also appeared and filed papers in opposition to the request. Following a contested hearing, the court denied the petition. The objectors then requested an award of attorney fees but the court ordered each side “to bear its own fees and costs.”
 

 Only the objectors appeal. The sole issue they raise is whether objectors to a petition brought pursuant to Civil Code section 1356 are entitled to costs and attorney fees when the petition is denied. We answer that question in the negative.
 

 I
 

 Built in 1963, Blue Lagoon is a common interest development in Laguna Beach that comprises 119 condominium units in 14 separate buildings. Five of the buildings, which include thirty-six units, are located on the beach behind a common area seawall which protects the units from the ocean. The remaining buildings are situated for the most part on the slopes which
 
 *475
 
 overlook, but are not directly threatened by, the ocean. CC&R’s were recorded against the subdivision in 1964 designating certain property, such as the seawall, common area which must be maintained by the Association. The covenants run with the land until July 1, 2014.
 

 Over the years, the maintenance and repair of the seawall has been one of the largest recurring expenses for the Association. There was evidence that it had cost the Association around $1.5 million to keep it in place and operating. Maintenance and repair of the seawall had also been the focal point of an acrimonious dispute between the members. Owners whose properties are protected by the seawall want each unit to pay an equal share of its maintenance and repair costs because it is part of the common area. On the other hand, owners whose properties are not directly benefited by the seawall want each unit to pay only a pro rata share of the costs equal to the benefit each unit receives, if any.
 

 This dispute is fueled by a weighted voting system, designed by the developer of the subdivision, which many members feel is unfair. When the development was built each unit was assigned an undivided percentage interest in the common area which ranged from a low of .56 percent to a high of 1.42 percent. The units with the higher percentage interest are generally located near the seawall. The percentage interest assigned to each unit determines the unit’s voting power, both in terms of whether a quorum is present and whether action proposed by the Association is adopted. However, expenses approved by the Association are shared equally by the units, regardless of the unit’s percentage interest in the common area. Thus, situations can arise where a minority of the members can force a majority of the members to pay for common area maintenance and repairs which the majority opposes—which is precisely what the Association and many of its members claim is happening here and why they believe the proposed amendments are so important.
 

 At the urging of several members, the Association proposed two amendments to the CC&R’s. The first one provided for equal voting rights, i.e., “one unit, one vote.” The second one provided the governing documents could be amended by majority, as opposed to the then required 75 percent supermajority, vote. The proposed amendments were submitted to the property owners for a vote, and despite extensive efforts by all sides, not everyone voted. Tallying the votes of those who participated in the election, the amendments failed to receive sufficient affirmative votes. The first proposal received 71 percent of the vote, and the second one received 69 percent of the vote.
 

 The Association then filed a petition pursuant to Civil Code section 1356, which was denied. Although the court expressed concern about the validity
 
 *476
 
 of the unequal voting arrangement, and thought that amendment perhaps could be approved, it denied the petition as a whole on the basis that the proposed amendments were “unreasonable.”
 
 [3]
 
 The court’s apparent fear was the proposed amendments, as drafted, would allow the Association to cease maintaining the seawall.
 

 II
 

 Having successfully fended off the petition, the objectors claim they are entitled to costs and attorney fees as the “prevailing party” because the petition was denied. They claim costs as a matter of right under Code of Civil Procedure section 1032, subdivision (b), and attorney fees under Civil Code section 1354 (because there is no provision for attorney fees in section 1356) and other equitable principles.
 

 The objectors’ argument begins with an assertion that the petition was an “action” which proposed the dilution of their voting rights, and thus their opposition to the petition was necessary to “enforce” the equitable servitudes and contractual provisions of the CC&R’s. As they view it, their enforcement of the CC&R’s gives them a right to exact a pound of flesh (in the form of fees and costs) from the Association for putting them through the ordeal of defending against the petition. But their characterization of the scope of the statute and the nature of the proceedings is misinformed.
 

 Civil Code section 1356 provides that, “If in order to amend a declaration, the declaration requires owners having more than 50 percent of the votes in the association ... to vote in favor of the amendment, the association, or any owner of a separate interest, may petition the superior court... for an order reducing the percentage of the affirmative votes necessary for such amendment. The petition shall describe the effort that has been made to solicit approval of the association members in the manner provided in the declaration, the number of affirmative and negative votes actually received, the number or percentage of affirmative votes required to effect the amendment in accordance with the existing declaration, and other matters the petitioner considers relevant to the court’s determination.” (§ 1356, subd. (a).) The petitioner is required to attach copies of the governing documents, the text of the proposed amendment, any notice and materials used to solicit voter approval, and a short explanation of the reason for the amendment. (§ 1356, subd. (a)(l)-(5).) In addition, the petitioner is required to give the
 
 *477
 
 members of the Association and any holders of a security interest notice of the hearing. (§ 1356, subd. (c).) If the court finds the balloting “was conducted in accordance with the applicable provisions” of the governing documents, a “reasonably diligent effort” was made to permit members to vote, owners having “more than 50 percent of the votes . . . voted in favor of the amendment,” and the “amendment is reasonable” (§ 1356, subd. (c) (l)-(6)), the court may, in its discretion, “dispense with any requirement relating to . . . the number or percentage of votes needed for approval of the amendment that would otherwise exist under the governing documents.” (§ 1356, subd. (d).)
 

 Viewed objectively, the purpose of Civil Code section 1356 is to give a property owners’ association the ability to amend its governing documents when, because of voter apathy or other reasons, important amendments cannot be approved by the normal procedures authorized by the declaration. (Sproul & Rosenberry, Advising Cal. Condominium and Homeowners Associations (Cont.Ed.Bar 1991) § 10.25, p. 459.) In essence, it provides the association with a safety valve for those situations where the need for a supermajority vote would hamstring the association. When the limited purpose of section 1356 is fully understood it is obvious a petition brought under this section is not an adversarial proceeding. No defendants are named. No rights are sought to be protected. No wrongs are sought to be redressed. As such, it cannot be said that by opposing the petition the objectors were enforcing the governing documents and thus entitled to attorney fees and costs.
 

 The objectors then argue that “equitable principles” support a statutory award of attorney fees because the Association’s petition violated its fiduciary duty to the minority members of the Association^ This argument is premised on the notion the present weighted voting systelm is fair because it protects the minority’s rights from the tyranny of the majority, and the Association’s decision to file the petition represents a decision by the Association to “side” with the majority in violation of its fiduciary duties to the minority members. The theory seems to be that unless the objectors can claim fees and costs when they win, the Association will financially overwhelm them through the continuous filing of frivolous petitions under Civil Code section 1356.
 

 This argument is shortsighted. In this case, the objectors “won.” But what if the Association had “won” and the petition had been granted? If we were to hold, as the objectors urge, that they are the prevailing party and thus entitled to attorney fees because they successfully beat back the majority’s efforts to amend the declaration, then is the Association entitled to its costs
 
 *478
 
 and fees against the objectors when they successfully bring a petition under Civil Code section 1356? If the objectors’ analysis were correct, the answer would have to be yes. Further, the objectors’ position would have the undesirable effect of discouraging fair comment by members who are opposed, or at least do not fully support, an association’s effort to amend the declaration through this statutory procedure. No member of an association would dare appear or file opposition to a petition under section 1356 if the potential downside was having to bear the association’s entire costs for pursuing the petition. This was clearly not the intent of this section.
 

 The posttrial order is affirmed. The Association shall recover its costs on appeal.
 

 Crosby, J., and Rylaarsdam, J., concurred.
 

 A petition for a rehearing was denied June 20, 1997, and the opinion was modified to read as printed above. Appellants’ petition for review by the Supreme Court was denied August 27, 1997.
 

 [1]
 

 Enacted in 1985, section 1356 is part of the Davis-Stirling Common Interest Development Act (Civ. Code, §§ 1350-1373) and is patterned after Corporations Code section 7515. It replaces the commonly used terms “covenants, conditions, and restrictions” and “CC&R’s” with the term “declaration.” (Civ. Code, § 1351, subd. (h).)
 

 [2]
 

 Objectors are Gwendolyn V. Mitchell, Elbert Davis, E. Cardón Walker, William Caldwell, Joseph T. Broderick, and Jeffrey S. Mintz. After the notice of appeal was filed, the Supreme Court held in
 
 Trope
 
 v.
 
 Katz
 
 (1995) 11 Cal.4th 274, 292 [45 Cal.Rptr.2d 241, 902 P.2d 259] that an attorney who litigates in propria persona cannot recover reasonable attorney fees under Civil Code section 1717. Because the objectors’ attorney, Jeffrey S. Mintz, had also appeared as a party he was concerned that
 
 Trope
 
 might bar his attorney fee claim even though he had substituted in as the attorney of record only at the appellate level. Consequently, he filed a “motion to correct erroneous designation of party” with this court claiming he was not a proper party because title to the property was held in trust and he was only acting in his capacity as a trustee of the family trust. We do not decide that motion because, as we hold below, the objectors do not have any right to recover attorney fees in this case in any event.
 
 0Olsen
 
 v.
 
 Breeze, Inc.
 
 (1996) 48 Cal.App.4th 608, 629 [55 CaI.Rptr.2d 818].)
 

 [3]
 

 A court cannot grant the petition unless it finds, among other things, that the proposed “amendment is reasonable.” (Civ. Code, § 1356, subd. (c)(5).)
 

 
 *477
 
 This analysis also eliminates any claim the objectors have that they are entitled to attorney fees under the enforcement provisions of the CC&R’s.