[No. D040637, D041486. Fourth Dist., Div. One. Jan. 7, 2004.]

RANCHO SANTA FE ASSOCIATION, Plaintiff and Respondent, v. PATRICIA DOLAN-KING, Defendant and Appellant.

## COUNSEL

Law Offices of Robert R. Massey and Robert R. Massey for Defendant and Appellant.

Musick, Peeler & Garrett, Michael J. Hickman; Lucas, Mullany, Boyer & Haverkamp and Richard L. Boyer for Plaintiff and Respondent.

## OPINION

**HUFFMAN, Acting P. J.**—Patricia Dolan-King, a homeowner in the residential community of Rancho Santa Fe, is the defendant and appellant in this action to enforce a protective covenant, brought by the Rancho Santa Fe Association (the Association). The Association obtained judgment in its favor for injunctive and declaratory relief and an award of attorney fees, based on Dolan-King's construction of a fence around her property without the appropriate permits or compliance with other Association regulatory criteria for the definition of "major" or "minor" construction. Dolan-King appeals, contending that the trial court erred in directing a partial verdict on the validity of certain land use regulations enforced by the Association, and that the jury verdict resulting after the partial directed verdict is unsupported by the evidence or the law. She also contends that attorney fees should not have been awarded. (Civ. Code, § 1354, subd. (f).)[1]

Our examination of the record leads us to conclude that the trial court was correct in finding the challenged Rancho Santa Fe Regulatory Code provisions (the regulatory code) are valid concerning the definition of the terms "major" and "minor" construction, and the subsequent jury verdict is supported by the evidence. We affirm the judgment and order of attorney fees to the Association as the prevailing party.

### FACTUAL AND PROCEDURAL BACKGROUND

In 1996, Dolan-King purchased a home on an approximately three-acre lot in Rancho Santa Fe, located at 6840 El Camino Del Norte. Property development in Rancho Santa Fe is subject to the Rancho Santa Fe Protective

---

[1] All further statutory references are to the Civil Code unless noted.

Covenant (Covenant), adopted and recorded in 1928 and amended at various times over the years. At the time she purchased her property, there was an original three-rail corral-type fence on it. Dolan-King originally proposed extensive remodeling plans (room addition structures) and a reconstructed fence composed of stucco columns joined by horizontal wood beams, and sought the appropriate permits from the Association. The Association reviewed those plans and denied permission to proceed with them. The story of that land use application and its processing by the Association is told in a published opinion, *Dolan-King v. Rancho Santa Fe Assn.* (2000) 81 Cal.App.4th 965 [97 Cal.Rptr.2d 280] (referred to as our prior opinion or *Dolan-King I*).

In that prior action, Dolan-King had sought a judicial determination of the validity and enforceability of certain unrecorded guidelines, which provided the criteria and restrictions used by the art jury of the Association to reject her applications as to both the room additions and the proposed fence project. (*Dolan-King I, supra,* 81 Cal.App.4th at p. 973.) Although Dolan-King had prevailed at trial, on appeal the Association obtained reversal of that judgment. This court concluded that "the relevant provisions of the protective covenant are enforceable equitable servitudes, and, with regard to Dolan-King's improvement applications, Dolan-King failed to meet her burden to show the Board's decisions were unreasonable and arbitrary under the circumstances." (*Id.* at p. 970.)

While that appeal was pending, Dolan-King caused to be constructed around the perimeter of her property a wrought iron fence approximately five feet in height and 800 feet long, with posts approximately every eight feet. She testified at trial that under her interpretation of paragraph 48 of the Covenant, she thought that this fence constituted minor construction, pursuant to the following Covenant definition: "The building of fences, walls, and similar structures, are divided into two classes: First, major construction; second, minor construction. *The property owner may proceed with what he definitely thinks is a minor construction without submitting plans* and specifications to the Art Jury as provided above, subject to the continuing jurisdiction of the Association through its Board of Directors to hear complaints against said minor construction . . . ." (Italics added.)

The Association, through its manager, sent her a letter June 3, 1999, informing her this fence was major construction under the regulatory code, section 31.0302, and that she should seek a permit or tear down the fence, or be subject to the imposition of a $500 lien for noncompliance with Covenant provisions and the revocation of her privileges to use Association facilities.

When she did not seek a permit or tear down the fence, the Association sent her a notice that a hearing would be held August 5, 1999, before the

Board regarding the revoking of her privileges to use Association facilities and the imposition of the $500 assessment. (The lien was released shortly before trial.) That hearing was held and those actions were taken by the Board. The minutes of the Board meetings state that the fence being discussed was not the one involved in the prior litigation, such that there was any approval of it pending that appeal.

The Association then brought this action for injunctive and declaratory relief to have Dolan-King seek the proper permits or remove the fence. Attorney fees were sought under section 1354. She responded with her cross-complaint for breach of contract, breach of fiduciary duty, slander of title, and related relief.

At trial call, various motions in limine were submitted and rulings made. As relevant here, the trial court refused Dolan-King's offer of proof to provide traffic and safety evidence about the traffic in the area of her property as it pertains to fencing.

At the outset of trial, Dolan-King's attorney agreed with the trial court that the validity of the regulatory code was subject to a ruling on its validity as a matter of law, based upon the governing documents of the Association. He argued that the Association had exceeded its powers by enacting the portions of the regulatory code dealing with major or minor construction, in contravention of paragraph 48 of the Covenant. Subsequently, the trial court rendered a statement of decision rejecting this argument and upholding the validity of the pertinent provisions of the regulatory code. This resulted in the entry of a partial directed verdict in favor of the Association. In its order, the court explained its reasoning as follows: Based on the relevant documentary evidence associated with this matter and the argument by the parties, the court found that the fence erected on the Dolan-King's property was "major construction" as that term is used in the Covenant and the regulatory code. Specifically:

"Paragraph 48 of the Rancho Santa Fe Protective Covenant provides: The building of fences, walls, and similar structures, are divided into two classes: First, major construction; second, minor construction. The property owner may proceed with what he definitely thinks is a minor construction without submitting plans and specifications to the Art Jury as provided above, subject to the continuing jurisdiction of the Association through its Board of Directors to hear complaints against said minor construction and to hear, try and determine the said complaints upon due notice to the defending property owner. Tennis courts and swimming pools are major construction."

The order continued, "Section 31.0301 of the Rancho Santa Fe Regulatory Code provides: Fences and Walls. All fences and walls shall constitute 'Major

Construction.' " (Although the court clearly intended to cite the fence and wall provisions, it erroneously cited to section 31.0301 in this respect; the actual language involved is not disputed and we may properly cite these provisions as shown in the record, section 31.0302.) The trial court then referred to section 31.0302.01 as specifying that "Wooden split-rail fences not exceeding 36 [inches] in height, and consisting of two or fewer rails, and which observe all set-back requirements established for structures in the Protective Covenant, shall be considered minor construction."

The trial court then concluded that pursuant to paragraph 48 of the Covenant and section 31.0302.01 of the regulatory code, "the only fence which constitutes 'minor construction' is a wood pasture rail fence with two rails, 36 [inches] or less in height. Based on the Court's review of the evidence and interpretation of Paragraph 48 of the Rancho Santa Fe Protective Covenant in conjunction with Sections 31.0302 and 31.0302.01 of the Rancho Santa Fe Regulatory Code, the subject fence constructed by defendant Patricia Dolan-King constituted 'major construction.' "

The remaining issues of the complaint and cross-complaint, concerning compliance with the Covenant, were then submitted to the jury. It heard testimony and evidence about the Association's procedures used to respond to the building of this wrought iron fence, and Dolan-King's own testimony and expert testimony to support her belief that the fence constituted minor construction. Dolan-King also presented evidence that another landowner (Cloverlane Associates) had received a hearing in 2001 pursuant to paragraph 48 of the Covenant, when objections to a fence it built were raised. She argues that she had been subject to disparate treatment, because the Cloverlane fence issues had been dealt with more formally.

After deliberations, the jury returned a verdict in favor of the Association, finding it had not breached the Covenant provisions as alleged, and against Dolan-King on her cross-complaint. The special verdict provided that the cross-complaint was dismissed, and:

"2. The fence erected by defendant on or about Memorial Day 1999 ('Subject Fence') is 'major construction' within the meaning of that term in the Rancho Santa Fe Protective Covenant ('Covenant') and the Rancho Santa Fe Regulatory Code ('Regulatory Code').

"3. The Subject Fence could not be constructed consistent with the Covenant and the Regulatory Code without first obtaining a permit from the Rancho Santa Fe Association in accordance with the procedures set forth in the Covenant and the Regulatory Code.

"4. The Subject Fence was constructed without obtaining a permit from the Rancho Santa Fe Association.

"5. The construction of the Subject Fence without a permit was a violation of the Covenant.

"6. The Subject Fence remains on the property of defendant Patricia Dolan-King as of the date of the jury verdict herein.

"7. In order to comply with the Covenant, defendant Patricia Dolan-King must remove the Subject Fence."

At further proceedings, the Association submitted a proposed form of judgment in the alternative, that Dolan-King should seek the appropriate permits or remove the fence. She objected that an alternative form of judgment was inappropriate. The judgment signed by the trial court ordered that she was "permanently enjoined from maintaining the Subject Fence on the 'Property' . . . To that end, defendant Patricia Dolan-King is enjoined and ordered to remove the Subject Fence from the Property within 30 days of the date of entry of this Judgment."

In subsequent proceedings, the Association's motion for attorney fees was granted in the amount of $318,293.50. The ruling stated that "the overall average hourly rate for the Association's attorneys in the amount of $221 is reasonable in light of the nature of the litigation, the difficulty of the litigation, the skill required and employed by the Association's attorneys, and the success of the Association in this litigation." Also, an award of fees was included to reflect the amount of $12,007 for paralegal time, as necessary for the support of the Association's attorneys.

Dolan-King appeals the judgment and order.

### DISCUSSION

We first discuss the partial directed verdict which upheld the validity of the challenged regulatory code provisions, in light of the standards set out in prior litigation arising under this Covenant. (Pts. I & II, *post.*) We will then turn to Dolan-King's arguments that the application of these regulations was unreasonable, as reflected in the jury verdict. We also evaluate the judgment in terms of the injunctive relief ordered and the attorney fees ordered. (Pt. III, *post.*)

### I

#### *APPLICABLE STANDARDS GLEANED FROM PRIOR LITIGATION*

Much of the groundwork for this appeal has been laid by our prior opinion, *Dolan-King I,* which dealt with the validity of parallel provisions enacted by

the Association, the unrecorded guidelines followed by the Association's art jury. Here, the issues concern the unrecorded regulatory code, but much of the same basic analysis is appropriate, as we next explain.

First, however, we must acknowledge the guidance provided by another prior opinion issued by this court, *Ticor Title Insurance Co. v. Rancho Santa Fe Assn.* (1986) 177 Cal.App.3d 726 [223 Cal.Rptr. 175] (*Ticor Title*). This case established the principle that the Association's power to "interpret" the Covenant does not grant its board any power to enact more stringent specific regulations than those expressly contained in the Covenant (e.g., setback regulations), unless appropriate amendment procedures have been followed as set forth in the Covenant: "The power to interpret, however, is not unlimited. The Board's construction of its interpretation powers leads to an extraordinary and unjust result. Under this construction, the Board is unlimited in its power to interpret the Covenant as it sees fit even if, as in the instant case, it involves ignoring express language in the Covenant and denigrating the voting rights of the property owners. We do not believe the covenanting parties intended the Board to have such unfettered powers by the process of 'interpretation.' " (*Id.* at pp. 733–734.)

Also in *Ticor Title, supra*, 177 Cal.App.3d 726, this court rejected the Association's argument that because the Covenant, paragraph 14, granted authority to the Association to adopt regulations for the "general welfare," a more extensive action, such as "a change or modification of existing provisions in the Covenant," could be accomplished outside of the amendment provisions set forth in the Covenant, paragraph 165. In that case, the setback restriction was not one of the basic restrictions contained in the Covenant, and hence the amendment provisions of paragraph 165 applied. (In our case, a basic restriction found in paragraph 48 is involved, hence the amendment provisions of paragraph 164 would apply if an "amendment, change, modification or termination" of a restriction is to be accomplished, by a required two-thirds vote of property owners.) Dolan-King is claiming the limits outlined in *Ticor Title* on the Association's power were exceeded when the Board adopted and enforced these portions of the regulatory code.

In order to examine this argument, we turn to the extensive guidance provided by the Supreme Court regarding the standards that apply in evaluating the validity of the challenged land use regulations, in this context of a governing land use covenant and subsequent, related regulations. In *Lamden v. La Jolla Shores Clubdominium Homeowners Assn.* (1999) 21 Cal.4th 249, 264 [87 Cal.Rptr.2d 237, 980 P.2d 940] (*Lamden*), the Supreme Court discussed its prior opinion, *Nahrstedt v. Lakeside Village Condominium Assn.* (1994) 8 Cal.4th 361 [33 Cal.Rptr.2d 63, 878 P.2d 1275] (*Nahrstedt*), which set forth the general rule, "[W]hen an association determines that a

unit owner has violated a use restriction, the association must do so in good faith, not in an arbitrary or capricious manner, and its enforcement procedures must be fair and applied uniformly." (*Id.* at p. 383.) Restrictions found in a governing land use covenant "are evaluated for reasonableness in light of 'the restriction's effect on the project as a whole,' not from the perspective of the individual homeowner. [Citations.] Accordingly, courts do not conduct a case-by-case analysis of the restrictions to determine the effect on an individual homeowner; we must consider the reasonableness of the restrictions by looking at the goals and concerns of the entire development." (*Dolan-King I, supra*, 81 Cal.App.4th at p. 975.)

To expand upon the nature of the various rules that may be used to create use restrictions in such developments, the Supreme Court sought in *Lamden* to clarify the "distinction between originating CC&R's and subsequently promulgated use restrictions. Specifically, we reasoned in *Nahrstedt* that giving deference to a development's originating CC&R's 'protects the general expectations of condominium owners "that restrictions in place at the time they purchase their units will be enforceable." ' [Citations.] Thus, our conclusion that judicial review of a common interest development's founding CC&R's should proceed under a deferential standard was, as plaintiff points out, at least partly derived from our understanding . . . that the factors justifying such deference will not necessarily be present when a court considers subsequent, unrecorded community association board decisions." (*Lamden, supra*, 21 Cal.4th at p. 264.)

Accordingly, in *Dolan-King I*, this court applied the rules developed in *Nahrstedt, supra*, 8 Cal.4th 361, and *Lamden, supra*, 21 Cal.4th 249, to such "subsequently promulgated use restrictions" that have not been recorded as running with the land. (*Id.* at p. 264.) In *Dolan-King I*, this court was concerned with the unrecorded guidelines followed by the Association's art jury, as opposed to here, the issues concerning the unrecorded regulatory code. In either case, "such unrecorded restrictions are not accorded a presumption of reasonableness, but are viewed under a straight reasonableness test 'so as to "somewhat fetter the discretion of the board of directors." ' [Citations.] We understand this distinction to primarily impact the respective burdens of proof at trial." (*Dolan-King I, supra*, 81 Cal.App.4th at p. 977.)[2]

[2] The Supreme Court has granted review in a case further examining the standards which govern the validity of a land use restriction in a common interest development, i.e., one that was adopted and recorded by an association after the purchase of the unit in the development. (*Villa de Las Palmas Homeowners Association v. Terifaj*, review granted Sept. 25, 2002, S109123.) That case is fully briefed but has not been set for oral argument. It is factually distinguishable because the challenged regulations in our case are unrecorded (the regulatory code.)

Before we examine the decision of the trial court to uphold the validity of the subject regulatory code provisions dealing with major versus minor construction, as applied to fence work, it is useful to compare the nature of the guidelines analyzed in *Dolan-King I* to the regulations at issue here. We noted previously that "[t]he Guidelines themselves do not purport to be strict restrictions on improvements or land use. They are intended to 'disseminate[] the site and design standards which the community holds as necessary to preserve community character; articulate[] the policies and goals by which the Association judges and regulates land use; and give[] a clear indication of those site and design principles which increase the probability of the issuance of Association permits.' " (*Dolan-King I, supra*, 81 Cal.App.4th at p. 978.) Accordingly, even though the guidelines were not formalized as recorded equitable servitudes, we found there was "nothing inherently unreasonable about the Guidelines in and of themselves. They are the Association's attempt to give property owners guidance, by way of detailed examples and explanation, on the criteria used by the Art Jury and Board in reviewing proposed improvements and exercising their broad discretion under the Covenant. The Board's desire to give property owners more concrete examples of how the Art Jury is likely to exercise its broad discretion is entirely legitimate and fair, even though the Guidelines are not binding restrictions. That Dolan-King lacked notice of the Guidelines does not affect their reasonableness, but may influence our determination of whether the Board fairly and reasonably relied upon them to deny Dolan-King's fence application . . . ." (*Ibid.*)

In this case, by comparison, section 31.03 of the regulatory code provides examples of various structures, improvements and grading that substantially affect community character and that therefore are deemed to constitute major construction. Section 31.0302 generally provides, "All fences and walls shall constitute 'Major Construction.' " However, section 31.0302.01 of the code specifically provides: "Exception: Split-Rail Fences. Wooden, unpainted split-rail fences not exceeding 36 [inches] in height, and consisting of two or fewer rails shall be considered minor construction." Another exception is provided for, i.e., garden walls that do not exceed 32 inches in height and that are composed of dry-laid materials, and which observe all set-back requirements established for structures in the protective Covenant, are considered to be minor construction. (Regulatory code, § 31.0302.02.)

■ For all practical purposes, the regulatory code is similar to the guidelines with respect to its unrecorded character, but its undisputed availability to interested Association homeowners for purposes of putting them on notice of the standards to be applied in evaluating development proposals. The same straight reasonableness test should be applied to the code as to the guidelines, with attention to whether any basic restrictions of the Covenant are actually amended, changed, modified or terminated by the code, within the meaning of the amendment provisions of the Covenant, paragraph 164. The question

here is whether the code accomplishes such a substantive amendment, etc., of basic restrictions, as opposed to defining any terms left undefined by the Covenant, such as major and minor construction. (Covenant, ¶ 48.)

## II

## VALIDITY OF REGULATIONS: PARTIAL DIRECTED VERDICT

Following the above described approach, we examine the trial court's grant of the partial directed verdict upholding the subject regulatory code provisions to decide if the court correctly applied the "straight reasonableness test [designed] 'to "somewhat fetter the discretion of the board of directors." ' [Citations.]" (*Dolan-King I, supra,* 81 Cal.App.4th at p. 977.) Where, as here, the decisive underlying facts (the nature of the fence and the actions taken by the Association), are undisputed, then the validity of the subject regulatory code provisions may be decided as a matter of law: "In such a case, in reviewing the propriety of the trial court's decision, we are confronted with questions of law. [Citations.] Moreover, to the extent our review of the court's declaratory judgment involves an interpretation of the Covenant's provisions, that too is a question of law we address de novo." (*Dolan-King I, supra,* 81 Cal.App.4th 965, 974.)

Dolan-King challenges the ruling in the Association's favor chiefly by contending that the regulatory code effectively modifies, changes, or amends the controlling Covenant provision, paragraph 48, but without the necessary compliance with paragraph 164, to submit the matter to a vote of homeowners. She is arguing that the Covenant expressly protects a subjective right of the property owner to have a belief that a subject fence is minor construction, and to act accordingly by having it installed without the need for any permits or Association approval. (Covenant, ¶ 48 ["The building of fences, walls, and similar structures, are divided into two classes: First, major construction; second, minor construction. *The property owner may proceed with what he definitely thinks is a minor construction without submitting plans* and specifications to the Art Jury as provided above, subject to the continuing jurisdiction of the Association through its Board of Directors to hear complaints against said minor construction . . . ." (italics added)].) Although paragraph 49 provides a procedure for the homeowner to submit plans to the art jury in case there is doubt about whether the contemplated work is a major or minor construction, she had no such doubt.

Further, Dolan-King argues that the powers of the Association and its board under the Covenant are primarily limited to promoting the general welfare of the community, and that this power should not allow aesthetic

considerations to override safety and traffic control considerations. (Covenant, ¶ 14.) She contends that the trial court erroneously read the Association's articles of incorporation and bylaws, together with the Covenant language, as allowing the code to define these terms with such specificity, when paragraph 48 of the Covenant is more general in nature.

The Association is granted the power in its governing documents to adopt regulations. The articles of incorporation, article II, section 1, and the bylaws, article IV, section 6(e) allow regulations to be enacted as authorized by the Covenant and the articles of incorporation and bylaws. Paragraph 37 of the Covenant gives the Association regulatory power to carry out the provisions of the Covenant and governing documents. Paragraph 14 of the Covenant authorizes the Association to adopt rules and regulations promoting the health, safety and general welfare of the residents.

The fallacy of Dolan-King's argument is that it focuses mainly upon her subjective beliefs as a homeowner, while failing to account for the well-accepted power of an association operating under the land use covenant to clarify and define its terms, so long as it is operating within the straight reasonableness standard. Both as to the governing Covenant and subsequently enacted restrictions, the inquiry should be whether their provisions are reasonable "in light of 'the restriction's effect on the project as a whole,' not from the perspective of the individual homeowner. [Citations.] Accordingly, courts do not conduct a case-by-case analysis of the restrictions to determine the effect on an individual homeowner; we must consider the reasonableness of the restrictions by looking at the goals and concerns of the entire development." (*Dolan-King I, supra*, 81 Cal.App.4th at p. 975.)

■ We disagree with Dolan-King that regulatory code sections 31.03 et seq. effectively amend or modify paragraph 48 of the Covenant. Rather, these code sections operate to define the terms "major" and "minor" construction, with respect to fencing. They preserve the right of a homeowner to proceed with minor construction without seeking permits, while permissibly defining the parameters of what should reasonably be considered minor construction. The Covenant section is properly subject to objective clarification of its terms, which are not defined in that document. It is not unreasonable for the Association to refer to the historical nature of low-lying split rail fences in the area as minor construction, thus preserving that category of the Covenant definition, while defining other types of fencing as major construction. So long as some fences may still constitute minor construction, the Covenant provision referring to minor construction has not been substantively modified or amended, changed, or terminated by this regulatory code. (Covenant, ¶ 164.)

■ Moreover, paragraph 48 itself reserves power to the Association, through its board of directors, "to hear complaints against said minor construction

and to hear, try and determine the said complaints upon due notice to the defending property owner," even when the property owner proceeded with what he definitely thought was "minor construction," without submitting plans and specifications. (*Ibid.*) This presupposes Association control to some extent over the definitions of those terms. Also, paragraph 49 provides a procedure for the homeowner to submit plans to the art jury in case there is doubt about whether the contemplated work is major or minor construction. Based upon this reserved power in the Association to hear, try and determine complaints about any construction, it is not unreasonable for the Association and its board to enact regulations that seek to define such terms as minor construction in order to give notice to homeowners of readily discoverable, objective standards for interpretation of the Covenant. The trial court correctly granted the partial directed verdict on this basis.

Because Dolan-King is primarily relying upon her subjective understanding of what constitutes minor construction, the main thrust of her challenge to the regulatory code is found in the application of those provisions to her, in an allegedly unreasonable manner. We now turn to those arguments.

### III

### *APPLICATION OF REGULATIONS AT TRIAL: JURY VERDICT*

Dolan-King has two main challenges to the jury verdict in the Association's favor that determined it had not breached the terms of the Covenant through its dealings with her fence construction. She first argues that even assuming the regulatory code is valid, as discussed above, the evidence nevertheless demonstrates that the Association did not follow its own procedures in dealing with her construction, and she was subject to disparate treatment in light of the more specifically referenced hearing that the Cloverlane Associates homeowners received, concerning paragraph 48. Thus, she claims the Association waived its right to enforce these regulations and they are unreasonable as applied to her.

Alternatively, she appears to be arguing that the trial court erroneously excluded her evidence about traffic and safety concerns surrounding her property, and that the judgment should be reversed because she was not allowed to fully present her case that this was minor construction. She mainly relies on case authority as follows: " 'A judgment may not be reversed on appeal, . . . unless "after an examination of the entire cause, including the evidence," it appears the error caused a "miscarriage of justice." [Citation.] . . . [W]here the error results in denial of a fair hearing, the error is reversible per se. Denying a party the right to testify or to offer evidence is reversible

per se. [Citations.]' " (*Kelly v. New West Federal Savings* (1996) 49 Cal.App.4th 659, 677 [56 Cal.Rptr.2d 803].)

## A

### Reasonableness of Procedures

Because this issue was resolved upon disputed evidence, including challenges to the credibility of the Association witnesses, a substantial evidence standard of review should apply. (*Toigo v. Town of Ross* (1999) 70 Cal.App.4th 309, 317 [82 Cal.Rptr.2d 649].) We accordingly disagree with appellant that this portion of the analysis must be conducted de novo, as pure documentary interpretation, in light of the parties' submission to the jury of disputed facts. (See *Davies Machinery Co. v. Pine Mountain Club Inc.* (1974) 39 Cal.App.3d 18, 23 [113 Cal.Rptr. 784].)

In ruling for the Association, the trial court impliedly made findings that the letters that the Association sent to Dolan-King in June 1999 referred to the regulatory code and therefore gave her adequate notice that a hearing would be held regarding whether there was noncompliance with the Covenant building restrictions and related regulations, and whether her membership privileges should be suspended and a lien recorded against her property as a consequence. It was not disputed that the only basis that existed for considering the suspension of her membership privileges was the subject fence construction without appropriate permits.

Dolan-King argues that proper procedures were not followed, because the record does not contain any homeowner complaints against her, as contemplated by paragraph 48 of the Covenant, and that therefore the Association should not have proceeded to enforce the regulatory code. However, the trial court could reasonably conclude that the June 3, 1999 Association manager's letter referring to the code and notifying her of her noncompliance constituted a "complaint" within the Covenant definitions. The trial court also determined that the notice given of the upcoming hearing was appropriate, even though the Association did not label the proposed hearing to be one held specifically under paragraph 48. Again, this was a reasonable interpretation of the documentary evidence. When Dolan-King was notified that a hearing would be held August 5, 1999 before the Board regarding the revoking of her privileges to use Association facilities and the imposition of a $500 lien assessment, she had already been placed on notice that the stated basis of that proposed action was noncompliance with the Covenant regarding the subject fence. Accordingly, the fact that the hearing was not labeled to be a proceeding under paragraph 48 was not dispositive. Dolan-King failed to make any convincing showing that the Association's dealings with her in

1999 in that manner were measurably unfair when compared to the Association's dealings in 2001 with another homeowner, Cloverlane, whose fence construction was opposed as not in compliance with Covenant standards, and where paragraph 48 was more expressly invoked.

The record also demonstrates that the subject fence was constructed while an appeal was pending from the earlier judgment arising from the original application for a fence permit and its denial, and that Dolan-King was knowledgeable about permit requirements for fences and had the advice of an attorney on the subject. She clearly understood the distinction between her original application to build the fence, and her claim that no application was necessary to build this fence. Accordingly, she has failed to show any impropriety in the notice and hearing given on the minor construction issue.

Dolan-King's backup position is that under any definition, the fence she built should be considered minor construction, because it was installed in a few days, was of relatively low cost, and was of a type that was relatively easy to install and remove. However, she has not shown that these criteria necessarily led to an objective conclusion that this fence was minor construction. The trial court had in evidence photographs and measurements about the subject fence and the original fence it replaced, along with testimony presented by Dolan-King's construction expert that some definitions were necessary as to "major" and "minor" construction, because those terms were not universally used one way or the other in the construction industry. It was not a foregone conclusion that only minor construction was involved here, when all the evidence was considered.

On the whole record, we cannot say that the trial court erred in deciding that the Association had not breached the Covenant through its utilization of the complaint and hearing procedure, nor had it waived its right to enforce these regulations. Dolan-King failed to show that she met any accepted standards about what was minor construction of a fence, such that any different result was required.

## B

### FAIRNESS OF TRIAL PROCEEDINGS

To evaluate the claims that the traffic and safety evidence was erroneously excluded, we refer to well-established authority that "an appellate court applies the abuse of discretion standard of review to any ruling by a trial

court on the admissibility of evidence. [Citations.] Speaking more particularly, it examines for abuse of discretion a decision on admissibility that turns on the relevance of the evidence in question. [Citations.] That is because it so examines the underlying determination as to relevance itself. [Citation.] Evidence is relevant if it has any tendency in reason to prove a disputed material fact. [Citation.]" (*People v. Waidla* (2000) 22 Cal.4th 690, 717 [94 Cal.Rptr.2d 396, 996 P.2d 46].)

Dolan-King's argument in this respect appears to be a claim that there should be a traffic and safety exception to the requirement that a permit be obtained for other than minor construction. She bases this argument upon public policy concerns, such as a right to privacy and to protect her home and family, and a theory that the burden of these regulations outweighs any benefit that is received from them.

While these arguments are appealing in the abstract, we cannot say that Dolan-King's efforts to present this evidence had any support in the language of the Covenant, its subsequently enacted regulations, or the Association's governing documents, in light of our conclusions above that the validity of the regulatory code could be addressed as a question of law, as agreed to in the trial proceedings. There is no express traffic or safety exception to the permit requirement. The Covenant includes concerns about the general welfare of the homeowners in the area, and the Association is given regulatory powers to promote them. Moreover, the same traffic concerns were addressed in the previous litigation that led to the *Dolan-King I* opinion, and the trial court here was of the belief that to allow traffic evidence to be introduced would be to retry that previous case. Under all the circumstances, we can find no abuse of discretion in the in limine rulings that excluded traffic and safety evidence about this particular property.

Finally, although Dolan-King now argues there was no adequate showing of irreparable harm to the Association to support the issuance of injunctive relief, she cannot be heard to complain about the form of relief ordered. This is because she objected to an alternative form of judgment, which would have allowed her to apply for a permit for the fence, or tear it down. The fence had been in place approximately three years by the time of trial, and she had never sought a permit due to her argument that none was required for minor construction. Once that issue was determined against her, and based upon her objection to allowing the permit procedure to be further pursued, any error in the issuance of the injunctive relief was either invited error or harmless. (7 Witkin, Cal. Procedure (4th ed. 1997) Judgment, § 22, p. 558.)

On the record before us, we cannot find Dolan-King showed that the Association's procedures as applied to her were unreasonable, nor that the trial proceedings were unfair.

## IV

### *ATTORNEY FEE AWARD*

Dolan-King appeals the trial court's order granting an award of attorney fees to the Association under section 1354, subdivision (f). The order authorized an award in the amount of $318,293.50, based on an overall average hourly rate for the Association's attorneys in the amount of $221, and an award for paralegal time.

Although Dolan-King has provided a copy of the order, she has not provided the moving and opposing papers on the fees matter. The only argument made in the opening brief is that this large award will have a chilling effect on discouraging legitimate opposition to the Association's business practices, which she labels as questionable. (*Blue Lagoon Community Association v. Mitchell* (1997) 55 Cal.App.4th 472, 476–478 [64 Cal.Rptr.2d 81].)

The party seeking to challenge an order on appeal has the burden to provide an adequate record to assess error. (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295–1296 [240 Cal.Rptr. 872, 743 P.2d 932].) Where the party fails to furnish an adequate record of the challenged proceedings, his claim on appeal must be resolved against him. (*Ibid.*; also see *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1140–1141 [104 Cal.Rptr.2d 377, 17 P.3d 735].)

Ordinarily, an award of attorney fees under a statutory provision, such as section 1354, subdivision (f), is reviewed for abuse of discretion. The Association remains the prevailing party here. We have been presented with no support for Dolan-King's claims of abuse of discretion with respect to the time expended, the hourly rate billed, or the nature of the costs assessed after the motion to tax was ruled upon. Accordingly, the proper course is to uphold the award. (*Vo v. Las Virgenes Municipal Water District* (2000) 79 Cal.App.4th 440, 447 [94 Cal.Rptr.2d 143].) The respondent's brief does not seek an award of attorney fees on appeal. The ordinary costs on appeal will be awarded to the Association, however.

## DISPOSITION

The judgment and order are affirmed. Costs on appeal to the Association.

Nares, J., and O'Rourke, J., concurred.

A petition for a rehearing was denied January 28, 2004, and appellant's petition for review by the Supreme Court was denied April 28, 2004. Werdegar, J., did not participate therein.