Filed 1/10/22  Wells Fargo Bank v. Mohazzabi CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| WELLS FARGO BANK, N.A. | B308081 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 20PSRO00945) |
| v. | |
| BEHROOZ MOHAZZABI, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, John A. Slawson, Judge.  Affirmed.

Behrooz Mohazzabi, self-represented Appellant.

Severson & Werson, Jan T. Chilton and Kerry W. Franich for Respondent.

_____

## *INTRODUCTION*

Wells Fargo Bank, N.A. sought a restraining order under the Workplace Violence Safety Act, Code of Civil Procedure section 527.8, against Behrooz Mohazzabi on behalf of its employee, Lorena Ocana.[1]  The trial court granted Wells Fargo's petition and enjoined Mohazzabi from contacting or approaching Ocana for two years.  Mohazzabi appeals, arguing that the order was not supported by substantial evidence.  We affirm.

## *FACTS AND PROCEDURAL BACKGROUND*

### 1.  *Mohazzabi's Escalating Behavior*

Wells Fargo's request for a workplace restraining order had its genesis in litigation Mohazzabi brought against Wells Fargo for an alleged fraudulent withdrawal from his account.  In 2017, while the lawsuit was pending, Mohazzabi sent Wells Fargo an email threatening to harm himself.  Mohazzabi's claim against Wells Fargo was eventually arbitrated.  In arbitration, Wells Fargo employee Lorena Ocana provided a declaration in support of Wells Fargo's motion for summary judgment.  Wells Fargo prevailed in the arbitration when the arbitrator granted summary judgment.

Mohazzabi then filed a lawsuit against Ocana, claiming she had perjured herself in the declaration.  Soon afterwards, Ocana and her husband began receiving telephone calls from a phone number, which Mohazzabi effectively admitted at the hearing was his.[2]  The caller did not speak English well, demanded to talk

---

[1]     All undesignated statutory references are to the Code of Civil Procedure.

[2]     Ocana testified that the phone number ended with the numerals "0757."  Mohazzabi acknowledged that his phone number ended with the same numerals.

2

to Ocana, and wanted her address.  After Ocana blocked the phone number, she began receiving calls from a blocked phone number.  Ocana retained counsel; on July 29, 2020, her counsel sent Mohazzabi a cease and desist letter informing him to stop communicating with Ocana and direct all communications to counsel.[3]  On August 5, 2020, Ocana's counsel emailed Mohazzabi telling him to direct all communications to counsel and to refrain from contacting Ocana.  Mohazzabi admitted receiving the letter and email.  In the email, counsel also informed Mohazzabi that counsel accepted service of Mohazzabi's complaint on Ocana's behalf.  Nonetheless, Mohazzabi responded via email also dated August 5, 2020, that counsel received the complaint a week ago but had not returned the proof of service, and that he had now hired a registered process server to serve Ocana.

Four days later, on August 9, 2020, at about 11:00 p.m., a man walked through the front gates of Ocana's property to her front door; he knocked very loudly on her door.  The individual was looking for Ocana and demanding to speak with her.  Ocana's husband answered the door.  Ocana tended to her frightened minor children who were awakened by the knocking.  The unidentified man would not immediately leave.  Instead, he got into his car and parked directly in front of Ocana's house.  Then, the man moved his car a short distance down the street, such that Ocana could see him over her fence.  The man in the car eventually left.  Although the trial court did not make an express finding on the issue, the evidence suggested that

---

[3]    Ocana's retained counsel is the same counsel who represented Wells Fargo at the hearing on the restraining order in the trial court.

this man was the process server who, according to his August 5, 2020 email, Mohazzabi had hired.

The next day, Ocana took her children to her mother's house because she was frightened by the incident, specifically by the way the man was yelling for her at her door, his tone, and the fact he pushed through the gate and went up to her front door late at night.

## 2. *Petition for a Workplace Restraining Order*

On August 14, 2020, Wells Fargo filed a petition for a section 527.8 workplace violence restraining order against Mohazzabi on behalf of Ocana. The petition does not appear in the clerk's transcript. At the hearing, Wells Fargo's attorney inquired whether two declarations filed in support of the petition were in the court file. The trial court confirmed that they were. Appellant did not include the declarations in the record on appeal.

Mohazzabi's response generally denied the petition's allegations. He also claimed that he was trying to obtain Ocana's home address so that he could serve her with the complaint he had recently filed against her.

Both Ocana and Mohazzabi testified at the hearing. We have summarized their testimony in section 1 above consistent with our standard of review.[4] At the close of the hearing, the trial court heard brief argument and issued a restraining order

_____

[4]    "On appeal, . . . we review an injunction issued under section 527.8 to determine whether the necessary factual findings are supported by substantial evidence. [Citation.] Accordingly, we resolve all factual conflicts and questions of credibility in favor of the prevailing party, and draw all reasonable inferences in support of the trial court's findings." (*City of San Jose v. Garbett* (2010) 190 Cal.App.4th 526, 538 (*Garbett*).)

against Mohazzabi.  The court found by clear and convincing evidence that Mohazzabi presented "a credible threat of violence" to Ocana.  (§ 527.8 subd. (a).)[5]  Mohazzabi appeals.

### DISCUSSION

Section 527.8 allows an employer to seek a restraining order on behalf of its employee who has "suffered unlawful violence or a credible threat of violence from any individual, that can reasonably be construed to be carried out or to have been carried out at the workplace."  (§ 527.8, subd. (a).)  A "credible threat of violence" includes a "course of conduct that would place a reasonable person in fear for his or her safety, or the safety of his or her immediate family, and that serves no legitimate purpose."  (§ 527.8, subd. (b)(2).)  If the court "finds by clear and convincing evidence that the respondent engaged in unlawful violence or made a credible threat of violence, an order shall issue prohibiting further unlawful violence or threats of violence."  (§ 527.8, subd. (j).)  We review the issuance of a section 527.8 restraining order for substantial evidence.  (*Garbett, supra,* 190 Cal.App.4th at p. 538.)

### 1.    *Mohazzabi's Failed to Provide an Adequate Record*

As respondent correctly points out, the appellate record does not include respondent's petition for a restraining order or the two declarations that respondent's counsel represents, without contradiction, were filed in support of the petition.  "The appellant must affirmatively demonstrate error by an adequate record.  In the absence of a contrary showing in the record, all presumptions in favor of the trial court's action will be made by the appellate court.  'If any matters could have been presented to

---

[5]    We do not recite the specific conduct prohibited by the restraining order because it is not relevant to the issues on appeal.

the court below which would have authorized the order [or judgment] complained of, it will be presumed that such matters were presented.'" (*Bennett v. McCall* (1993) 19 Cal.App.4th 122, 127.)

Mohazzabi failed to provide in the Clerk's Transcript the petition for the restraining order or the supporting declarations. Without these documents, this court cannot meaningfully consider the trial court's order or assess appellant's claim that there was insufficient evidence to support the issuance of the order. Accordingly, his claims of error must be resolved against him. "The party seeking to challenge an order on appeal has the burden to provide an adequate record to assess error. Where the party fails to furnish an adequate record of the challenged proceedings, his claim on appeal must be resolved against him." (*Rancho Santa Fe Assn. v. Dolan-King* (2004) 115 Cal.App.4th 28, 46; citation omitted. See *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1140–1141.)[6]

## 2. *Substantial Evidence Supported the Issuance of the Restraining Order*

Even if we were to consider the merits of appellant's appeal, our disposition would be the same. Respondent produced substantial evidence that Mohazzabi engaged in a course of conduct that "would place a reasonable person in fear for his or her safety, or the safety of his or her immediate family, and that serves no legitimate purpose." (§ 527.8, subd. (b)(2).) Mohazzabi had previously threatened violence (harming himself) in the

---

[6] That plaintiff is self-represented does not relieve him of his burden on appeal. (See *Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 984; *Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1247 [self-represented litigants "must follow correct rules of procedure" and their failure to do so may forfeit any challenge on appeal].)

context of his dealings with Wells Fargo. The trial court reasonably could have concluded this prior threat of violence, arising out of the same series of transactions, added credibility to Ocana's claim as to Mohazzabi's conduct towards her. After Ocana provided a declaration in support of Wells Fargo's motion for summary judgment, Mohazzabi targeted Ocana. He sued her, repeatedly called (or arranged for someone to call) her personal phone, and demanded her address.

The trial court reasonably could have rejected Mohazzabi's claim that he was merely trying to serve her with the summons and complaint. Substantial evidence also supported the implied findings that, after Ocana's counsel accepted service of Mohazzabi's complaint and requested Mohazzabi not to contact Ocana, four days later a process server acting at Mohazzabi's direction went to Ocana's home late at night, waking and frightening the family. Ocana was so concerned about Mohazzabi's escalating tactics, she moved her minor children to her mother's home. The increasingly aggressive conduct, which served no legitimate purpose, and Mohazzabi's history of threatening violence provided substantial evidence supporting the court's restraining order.

Mohazzabi offers several reasons why the evidence was legally insufficient. First he points out that he never worked for Wells Fargo. The Workplace Violence Safety Act permits an employer to seek a restraining order against "any individual." It is not limited to restraining conduct of an employer's employee. (§ 527.8, subd. (a).) Mohazzabi also contends that he lives in the Bay Area and Ocana lives in Los Angeles. This argument fails to address the evidence before the court. The geographical distance does not prevent Mohazzabi from picking up a phone to call Ocana, or from driving or flying to Los Angeles to harass or make physical contact with her or her family. Mohazzabi cites no legal

7

authority for either of these assertions and we may disregard them. (See Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2021) ¶ 9:21 ["appellate court can treat as waived or meritless any issue that, although raised in the briefs, is not supported by pertinent or cognizable legal argument or proper citation of authority"].)

Mohazzabi also contends Ocana failed to establish that the "shadowy man" who knocked at her door and lingered outside her home was Mohazzabi. This contention too is a non-starter. The trial court reasonably could have found that either Mohazzabi or someone acting on his behalf appeared at Ocana's home late at night and had made the earlier phone calls. Lastly, without citation to the record, Mohazzabi argues that the trial court deemed him "guilty" because he "looks like a person from [the] middle east." Accusations of this nature, without any basis in fact go nowhere in a court of law. We have reviewed the record and find no evidence that supports Mohazzabi's assertion.[7]

---

[7] Mohazzabi requests this court to "grant the attachment" of his phone records. Mohazzabi did not designate any of the trial exhibits in his Notice Designating Record on Appeal, and we decline to consider new documents at this late stage. "It is an elementary rule of appellate procedure that, when reviewing the correctness of a trial court's judgment [or order], an appellate court will consider only matters which were part of the record at the time the judgment [or order] was entered. [Citation.]" (*Reserve Insurance Co. v. Pisciotta* (1982) 30 Cal.3d 800, 813.) To the extent the court may have denied the admission of certain exhibits, Mohazzabi has not demonstrated the trial court erred in its ruling.

8

### *DISPOSITION*

We affirm the court's order.  Wells Fargo, N.A. is awarded costs on appeal.



RUBIN, P.J.

I CONCUR:



MOOR, J.

Wells Fargo Bank, N.A. v. Behrooz Mohazzabi

B308081


BAKER, J., Concurring


I join the opinion for the court, with the exception of Part 2 of the Discussion section.


BAKER, J.