[No. C062389. Third Dist. Mar. 25, 2011.]

BEAR CREEK PLANNING COMMITTEE, Plaintiff, Cross-defendant and Respondent, v.
ROBERT FERWERDA, Defendant, Cross-complainant and Appellant;
JAMES WARE et al., Cross-defendants and Respondents.

ROBERT FERWERDA, Plaintiff, Cross-defendant and Appellant, v.
DAVID BORDON et al., Defendants and Respondents;
JAMES WARE et al., Cross-complainants and Respondents.

BEAR CREEK PLANNING COMMITTEE, Plaintiff and Respondent, v.
ROBERT FERWERDA, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

*Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of part C of the Factual and Procedural Background and parts III, IV, V, and VI of the Discussion.

---

**COUNSEL**

Thomas & Associates and Michael W. Thomas for Appellant Robert Ferwerda.

Law Offices of Samuel G. Grader, Christian B. Green; Porter & Simon, James E. Simon; Lewis Brisbois Bisgaard & Smith, Jeffry A. Miller, Judith M. Tishkoff and Matthew B. Stucky for Respondent Bear Creek Planning Committee.

Porter Scott, Timothy M. Blaine and John F. Doyle for Respondents David Bordon, Richard E. Irving, Peter M. Turner, Irene Wertheim, Ronald Scoglio, Carole Lynn Keller and Bear Creek Valley Board.

Louis A. Basile for Respondents James Ware and Cindy Ware.

---

**OPINION**

**ROBIE, J.**—This appeal follows a trial by reference[1] of three consolidated cases. The trial court entered judgment against plaintiff Robert Ferwerda, who had been trying to build a home on his vacant lot. He had sued the Bear Creek Planning Committee (the committee) and the individuals who comprised the Bear Creek Valley Board (the board) who he contended inappropriately blocked construction on his lot. He had also sued his next-door neighbors, James and Cindy Ware (the Wares), contending they had violated the covenants, conditions, and restrictions (CC&R's) in building and remodeling their house. Ferwerda appeals from a judgment entered in favor of the committee, the board, and the Wares, which included awards of attorney fees to the committee and the Wares. We affirm the judgment as to the committee and the Wares, except as it relates to the attorney fees. As to those orders, we reverse. Finally, as to the board, we dismiss as moot the appeal relating to it.

---

[1] A trial by reference is a proceeding under Code of Civil Procedure section 638, subdivision (a), which provides that a referee may be appointed by agreement of the parties to "hear and determine any or all of the issues in an action or proceeding, whether of fact or of law, and to report a statement of decision." That "statement of decision . . . is the equivalent of a statement of decision rendered by a superior court under Code of Civil Procedure section 632." (*Central Valley General Hospital v. Smith* (2008) 162 Cal.App.4th 501, 513 [75 Cal.Rptr.3d 771].) As such, a referee's statement of decision is subject to appellate review using the same rules that apply to a trial court's statement of decision. (*Ibid.*) For simplicity, here we refer to the referee as the trial court.

## FACTUAL AND PROCEDURAL BACKGROUND

### A

### *Introduction*

Robert Ferwerda owns lot No. 134 in Alpine Meadows Estates subdivision unit No. 4 (subdivision No. 4). Since 2001, he has been trying to obtain approval to build a house on his lot. This litigation surrounds events related to securing that approval, interpretation of the CC&R's and related restrictions on the lots in subdivision No. 4, and the resolution of the three cases consolidated in the trial court.

### B

### *The CC&R's, the Green Book, and the 2002 Architectural Review Manual*

The CC&R's that govern subdivision No. 4 were recorded in 1964 and establish "a general plan for the improvement and development" of the property. The guiding principle is "that it is to the best interest of the area that it be developed into an attractive ski area, alpine in character and appearance, with as little damage to the natural beauty of the land and trees as is possible." To that end, the CC&R's contain several restrictions on the subdivision. Among other things, owners are not permitted to cut down trees over five inches in diameter on their lots without approval from the committee. More generally, owners are required to receive approval from the committee before constructing or excavating on their lots. The owners' plans and specifications and the committee's approval must be "in accordance with the procedures and standards set forth in the Bear Creek Planning Committee Restrictions." The "Bear Creek Planning Committee Restrictions" were incorporated into the CC&R's as exhibit A in 1964.

The committee incorporated in 1978. The articles of incorporation describe the committee's primary purpose as "promoting the social welfare of the community of Alpine Meadows, California and for the mutual benefit of all property owners in that community through supervision and enforcement of the [CC&R's]." Among its powers and duties as articulated in its bylaws are "[t]o review and approve or disapprove plans and specifications for improvements in the Bear Creek Valley pursuant to the CC&R's," "conduct, manage and control the affairs of the corporation and to make such rules and regulations thereof as they may deem appropriate," and "maintain, issue, and revise at its discretion" a procedures, regulations, and standards manual.

In 1990, the committee published the so-called green book that contains procedures, regulations, and standards. The "green book" notes the observance of objective criteria for plan approval and of subjective criteria guided by a proposed plan's "harmony with the environment in which the structure is placed and harmony with its surroundings." The restriction on tree removal is continued. It recommends use of fire-retardant composition shingles. Finally, it includes the following attorney fees provision: "In the event that it is necessary for the Committee to initiate litigation to enforce the provisions of these Provisions, Regulations, and Standards, then the Committee shall be entitled to recover its reasonable attorneys' fees and costs."

The green book was revised in 2002 and that revision became known as the 2002 architectural review manual. The manual states, among other things, "[t]he design of each structure must bear a harmonious relationship to the land and its neighbors" and live trees cannot be removed without board approval. Similar to the green book, it contains the following attorney fees provision: "In the event that it is necessary for the [committee] to enforce the provisions of the [2002 architectural review manual] by obtaining legal advice to clarify issues, initiate litigation, filing and/or preparing legal documents or filing and preparing a Cease and Desist Order, then [the committee] shall be entitled to recover its reasonable attorney fees and costs from the Performance Deposit or other means as may be deemed necessary. Legal expenses above the performance deposit may be recovered by fines assessed."

C

*Ferwerda's Activities and Resulting Litigation**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

DISCUSSION

I

*The Committee Has the Power to Adopt Standards Beyond*
*Those Set Forth in the CC&R's*

Section 6 of the CC&R's states the committee may act on applications, "all in accordance with the procedures and standards set forth in the Bear Creek Planning Committee Restrictions, a copy of which is attached hereto as

---

*See footnote, *ante*, page 1178.

Exhibit A and by this reference is made a part hereof. Except as to set-backs (Paragraph 13 hereof), *in the event of a conflict between the standards required by said Committee and those contained herein, the standards of said Committee shall govern.*" (Italics added.)

The trial court found this italicized language "empowers the [committee] to adopt new conditions on an ongoing basis." As we explain below on our de novo review (*Ekstrom v. Marquesa at Monarch Beach Homeowners Assn.* (2008) 168 Cal.App.4th 1111, 1121 [86 Cal.Rptr.3d 145]), the trial court was correct to the extent this language allows the committee to adopt new design standards related to the improvement or development of lots in subdivision No. 4.

■ The interpretation of CC&R's is governed by the rules for interpreting contracts. (*Fourth La Costa Condominium Owners Assn. v. Seith* (2008) 159 Cal.App.4th 563, 575 [71 Cal.Rptr.3d 299].) ■ It is a long-standing rule that "[a]ll parts of a [contract] must be applied so as to give effect and meaning to every part, if possible . . . ." (*Burnett v. Piercy* (1906) 149 Cal. 178, 189 [86 P. 603]; see Civ. Code, § 1641 ["[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other"].)

■ The plain language of section 6 of the CC&R's contemplates the committee may adopt standards beyond those contained in exhibit A as it existed when the CC&R's were adopted. This is evidenced by the acknowledgment in section 6 that if there is a conflict between the standards set forth in that section and the "standards required by [the] [c]ommittee," the standards of the committee govern. If the committee had no power to adopt standards beyond those in the CC&R's, there would be no need for this language. We must read the CC&R's as a whole and adopt the construction that gives effect to every part of the CC&R's. (*Ezer v. Fuchsloch* (1979) 99 Cal.App.3d 849, 861 [160 Cal.Rptr. 486] ["[a] cardinal principle of document construction is that a document must be 'construed as a whole' so as 'to give effect to every part thereof . . .' "].)

The question then becomes what is meant by "standards" as that term is used in the CC&R's. That term is used in section 6 in reference to the "procedures and standards set forth in the Bear Creek Planning Committee Restrictions" that are attached to the CC&R's. In those restrictions, there is a "standards" section. The first paragraph entitled, "GENERAL" explains in part that "[t]he design of each structure must bear a harmonious relationship to the land and its neighbors, in terms of lot coverage, mass and degree of individual expression." The remaining 13 paragraphs (with the exception of the last one, which addresses variances) detail architectural design standards,

i.e., standards for such things as floorspace, decks, roofs, exterior walls, windows, colors and finishes, and parking places. In the context of the CC&R's, then, the term "standards" refers to architectural design standards.

Ferwerda offers no interpretation of this language in section 6 of the CC&R's. Instead, he points to case law and testimony from the committee's expert witness, which he claims negate our interpretation of the CC&R's. Neither helps him.

The cases relied on by Ferwerda, *Werner v. Graham* (1919) 181 Cal. 174 [183 P. 945] and *Riley v. Bear Creek Planning Committee* (1976) 17 Cal.3d 500 [131 Cal.Rptr. 381, 551 P.2d 1213], are distinguishable.

In *Werner*, a developer subdivided a tract and recorded a map of the tract that "showed no building lines or anything else to indicate any purpose of restricting in any way . . . ." (*Werner v. Graham, supra*, 181 Cal. at p. 177.) He then sold the lots. (*Id.* at pp. 177–178.) The early deeds contained "restrictive provisions" that were "so uniform and consistent in character as to indicate unmistakably that [the developer] had in mind a general and common plan which he was following." (*Id.* at p. 177.) The developer told the purchasers, "he was exacting the same restrictive provisions from all purchasers." (*Id.* at pp. 178–179.) The developer later quitclaimed the property eventually purchased by the plaintiff, but the deed to this property contained no restrictions. (*Id.* at p. 179.) The court held restrictions placed in the earlier deeds to the other properties were not binding on the plaintiff. (*Id.* at pp. 184–186.)

In *Riley*, the developer sold a property via a deed that contained no restrictions. (*Riley v. Bear Creek Planning Committee, supra*, 17 Cal.3d at pp. 503–504.) Nine months later, the developer recorded a document purporting to impose uniform restrictions on a number of lots, including the one in dispute. (*Id.* at p. 504.) The court held these restrictions did not apply to the lot sold earlier. (*Id.* at pp. 506–507.)

Both of these cases are distinguishable because the CC&R's here specifically acknowledge the possibility of a conflict between the standards set forth therein and the "standards required by [the] [c]ommittee" and assert that if such a conflict arises, the standards required by the committee govern. Ferwerda signed that he "read and approved" the CC&R's.

The expert testimony to which Ferwerda points also does not help him. That testimony consisted of the opinion of the committee's expert that section 6 does not expressly authorize the committee to create new or different standards than those attached in exhibit A (as other CC&R's he had worked

on did) but that by implication, the committee had such authority. This testimony undercuts Ferwerda's position because it supports a reading of section 6 (if only by implication) that gives the committee such authority.

Based on the plain language of section 6 of the CC&R's, we hold the committee had the power to adopt standards beyond those set forth in the CC&R's, which are reflected in the green book and the 2002 architectural review manual.

## II

### *The Trial Court Erred in Awarding Attorney Fees to the Committee and to the Wares*

Ferwerda contends the court erred in requiring him to pay the committee's and the Wares' attorney fees. In his view, the green book and the 2002 architectural review manual cannot be the bases for authorizing the attorney fees because they are unrecorded and were enacted by an unelected committee without approval of the property owners.

The committee and the Wares take the position adopted by the trial court, i.e., the attorney fees were permissible because the green book and the 2002 architectural review manual provide for the recovery of attorney fees for prevailing parties such as themselves. And, in any event, Ferwerda asked for attorney fees if he prevailed and since he lost in the trial court, he was liable for the other side's attorney fees.

■ A prevailing party is entitled to attorney fees when authorized by statute or contract. (Code Civ. Proc., §§ 1032, 1033.5, subd. (a)(10).) Here, the CC&R's contain no attorney fees provision. Rather, the green book and the 2002 architectural review manual provide for recovery of attorney fees by the committee. In reviewing these publications in part I of the Discussion, we explained that the CC&R's give the committee power to adopt new design standards relating to the improvement or development of lots in subdivision No. 4. The question is whether that power allows the committee to adopt attorney fees provisions not contained in the CC&R's.

The committee contends it had such broad power because the CC&R's and its own bylaws give it the authority to "expand upon and describe the provisions of the CC&Rs" and "[s]o long as such rules and guidelines are reasonable and do not conflict with the CC&R's, they will be held to be enforceable." In support, they cite *MaJor v. Miraverde Homeowners Assn.* (1992) 7 Cal.App.4th 618 [9 Cal.Rptr.2d 237] and *Rancho Santa Fe Assn. v.*

*Dolan-King* (2004) 115 Cal.App.4th 28 [8 Cal.Rptr.3d 614] (*Rancho Santa Fe*). Neither case helps the committee.

In *MaJor*, the court addressed whether the homeowners association was authorized to discriminate between resident members and nonresident members in the use and enjoyment of common areas. (*MaJor v. Miraverde Homeowners Assn., supra*, 7 Cal.App.4th at p. 625.) The CC&R's granted every member a right and easement of enjoyment in and to the common areas within the property, subject only to the right of the association to establish uniform rules and regulations pertaining to a member's use of the common areas and recreational facilities. (*Ibid.*) Nonresident members asserted the association acted without authority in restricting the use of common areas by nonresident members. (*Ibid.*) The court agreed, explaining as follows: "an association may not exceed the authority granted to it by the CC&R's. Where the association exceeds its scope of authority, any rule or decision resulting from such an ultra vires act is invalid whether or not it is a 'reasonable' response to a particular circumstance. Where a circumstance arises which is not adequately covered by the CC&R's, the remedy is to amend the CC&R's. The courts have held homeowners are subject to any reasonable amendment of the CC&R's properly adopted . . . ." (*Id.* at p. 628.)

In *Rancho Santa Fe*, the court addressed whether a homeowners association could apply a regulation adopted subsequent to the enactment of land use covenants that clarified the terms of one of those covenants permitting a homeowner to undertake "minor" (as opposed to "major") construction without the art jury's approval. (*Rancho Santa Fe, supra*, 115 Cal.App.4th at p. 40.) In holding the association could, the court explained the governing documents granted to the association power to adopt regulations and further explained an association operating under a land use covenant had the "well-accepted power" to clarify and define the covenant's terms, so long as it did so reasonably. (*Id.* at p. 41.)

These cases do not support the authority of the committee to enact the attorney fees provisions here. In *MaJor*, the court limited the association's authority to that granted to it in the CC&R's. It is not enough, as the committee argues, that the attorney fees provisions are reasonable. *MaJor* rejected this argument, noting that if a circumstance arises that is not adequately covered by the CC&R's, the remedy is to amend the CC&R's, regardless of whether the association's actions are reasonable. (*MaJor v. Miraverde Homeowners Assn., supra*, 7 Cal.App.4th at p. 628.) Here, the CC&R's are silent on attorney fees. It is a situation, therefore, "not adequately covered by the CC&R's," requiring amendment of the CC&R's to insert such a provision. (*Ibid.*) Similarly, in *Rancho Santa Fe*, the court's holding that the regulation was enforceable turned on the fact the governing

documents granted the association power to adopt regulations and the fact the at-issue regulation served only to reasonably clarify terms already in the land use covenant. (*Rancho Santa Fe, supra,* 115 Cal.App.4th at p. 41.) Here, the attorney fees provisions do not seek to clarify existing language in the CC&R's. Rather, they are an attempt by the committee to insert a new provision that binds homeowners without their approval.

Undaunted, the committee continues to argue that the CC&R's, the green book, and the 2002 architectural review manual "must be construed together as one contract, as the rules and standards in the Greenbook and [the 2002 architectural review manual] give effect to the CC&Rs." In support, it cites *Huntington Landmark Adult Community Assn. v. Ross* (1989) 213 Cal.App.3d 1012 [261 Cal.Rptr. 875].) There, the defendants challenged an attorney fees award, contending there was no provision for attorney fees in the CC&R's. (*Id.* at p. 1023.) The court held the defendants were "mistaken" because the supplemental declaration of easements, covenants, conditions and restrictions contained an attorney fees provision. (*Ibid.*) *Huntington* is unhelpful here. To the extent the green book and the 2002 architectural review manual deal with topics already covered by the CC&R's and simply serve to reasonably clarify their meaning (see *Rancho Santa Fe, supra,* 115 Cal.App.4th at p. 41) or to the extent they adopt new or different standards (which as we have explained in pt. I of the Discussion the CC&R's give the committee the power to do), those documents are a legitimate exercise of the committee's power granted to it under the CC&R's. They therefore bind the homeowners whether we view them as separate or supplemental to the CC&R's. The same reasoning does not apply to the attorney fees provisions. Nothing in the CC&R's gives the committee the power to insert into the green book and the 2002 architectural review manual an attorney fees provision that was never in the CC&R's or contemplated therein. *Huntington* simply does not cover this situation.

We turn then to the other basis on which the committee and the Wares seek to uphold the attorney fees awards: Ferwerda asked for attorney fees if he prevailed and since he lost in the trial court, he was liable for the other side's attorney fees. The problem with this argument is that it relies on an incomplete statement of the law.

■ Pursuant to Civil Code section 1717, "a prevailing party is entitled to attorney fees only if it can prove it would have been liable for attorney fees had the opponent prevailed." (*M. Perez Co., Inc. v. Base Camp Condominiums Assn. No. One* (2003) 111 Cal.App.4th 456, 467 [3 Cal.Rptr.3d 563].) In *Perez,* we disapproved dictum in our earlier opinion in *International Billing Services, Inc. v. Emigh* (2000) 84 Cal.App.4th 1175 [101 Cal.Rptr.2d 532], which said, "Where a party claims a contract allows fees and prevails, it gets

fees. Where it claims a contract allows fees and loses, it must pay fees." (*International Billing Services*, at p. 1190.) We explained in *Perez*: "The fallacy of the rule stated in *International Billing Services* is the assumption that if the party who claims that a contract allows fees prevails in the underlying litigation, it gets attorney fees. In truth, the party must still prove that the contract allows attorney fees. The mere allegation is not enough." (*Perez*, at p. 468.) The same applies for a losing plaintiff. For a losing plaintiff to be required to pay attorney fees, the plaintiff's "bare *allegation* that [h]e is entitled to receive attorney's fees [is] not . . . sufficient"; he also had to have established the attorney fees clauses "*actually* entitled" him to recover fees. (*Leach v. Home Savings & Loan Assn.* (1986) 185 Cal.App.3d 1295, 1307 [230 Cal.Rptr. 553].) Here, Ferwerda never so established, and as we have explained, he could not so establish because the attorney fees provisions in the green book and the 2002 architectural manual did not legitimately serve to add an attorney fees provision to the CC&R's.[2] Therefore, the committee and the Wares could not claim the right to attorney fees simply because Ferwerda had asked for those fees in his complaint.[3]

In sum, there was no basis, either contractual or statutory on which to award attorney fees to the committee or the Wares.[4] The fees awards must be reversed.

III–VI[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

[2] Ferwerda also claimed attorney fees under the private attorney general fee statute (Code Civ. Proc., § 1021.5) in his first amended cross-complaint. The provisions of Civil Code section 1717 are distinct from and have no application to the private attorney general fee statute. Section 1717's right to attorney fees is based on the notion of reciprocal *contractual* attorney fees.

[3] We note also the attorney fees provisions in the green book and the 2002 architectural review manual were unilateral, in favor of the committee. "Section 1717 of the Civil Code, however, which governs enforcement of contractual attorney fees provisions, provides that any contractual attorney fees provision must be applied *mutually* and equally to all parties to the contract, even if it is written otherwise." (*Scott Co. v. Blount, Inc.* (1999) 20 Cal.4th 1103, 1106 [86 Cal.Rptr.2d 614, 979 P.2d 974].)

[4] The above analysis applies to the Wares' claims of attorney fees as well. The Wares' argument that they are entitled to attorney fees is based on the attorney fees provision in the green book, which they claim Ferwerda relied upon throughout the litigation here. Whether that is true is irrelevant. Because we hold the committee had no power to insert the attorney fee provision into the green book, the Wares cannot rely on that provision to claim they are entitled to attorney fees.

[*] See footnote, *ante*, page 1178.

## DISPOSITION

The orders for attorney fees are reversed. In all other respects, the judgment as to the committee and the Wares is affirmed. The appeal as to the board is dismissed. The board is entitled to its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).) Ferwerda, the committee, and the Wares shall bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(3).)

The stay issued by this court on December 29, 2010, is vacated upon finality of this opinion.

Nicholson, Acting P. J., and Butz, J., concurred.

A petition for a rehearing was denied April 11, 2011, and appellant's petition for review by the Supreme Court was denied June 9, 2011, S192803.