Filed 3/5/14  Bel Air Glen HOA v. Dowlatshahi CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| BEL AIR GLEN HOMEOWNERS ASSOCIATION, INC., <br><br>     Cross-complainant and Respondent, <br><br> v. <br><br> REZA DOWLATSHAHI et al., <br><br>     Cross-defendants and Appellants. | B243549 <br><br> (Los Angeles County <br> Super. Ct. No. BC449013) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael P. Linfield, Judge.  Reversed with directions.

Gieleghem Law Office and Neil Gieleghem for Cross-defendants and Appellants.

Raiskin & Revitz and Steven J. Revitz for Cross-complainant and Respondent.

_____

A married couple quitclaimed their condominium to an individual, who took possession. The board of directors of the homeowners association demanded a copy of the "lease." The couple's attorney told the board there was no "lease." The board's response was again to demand a copy of the "lease." The couple's response was again to state there was no lease. Not satisfied, the board kept demanding the lease and the couple kept responding that it did not exist. The board did not inquire whether the property had been transferred by some means other than a lease. Eventually, the board imposed approximately $13,000 in fines on the couple for failure to provide a copy of "the lease."

The couple filed suit to stop the harassment and the homeowners association cross-complained to recover the fines levied. The dispute was tried to the court and resulted in judgment for the homeowners association of $2,000 in fines. In a postjudgment order, the trial court awarded attorney fees to the association.

We conclude the judgment is not supported by substantial evidence. The award of $2,000 was based solely on the couple's failure to provide a copy of "the lease." It is undisputed there was no lease. Instead, there was a quitclaim deed. Moreover, the trial court's award of attorney fees to the homeowners association does not survive the reversal of the underlying judgment. The homeowners association may not recover the fees awarded by the trial court in connection with the reversed judgment.

# I

# BACKGROUND

The pertinent facts are not in dispute.[1] They are as follows. Around 1992, Reza and Soraya Dowlatshahi purchased a condominium in the Bel Air Glen condominium project. The Dowlatshahis were members of the homeowners association (Association). The condominium was subject to a declaration of conditions, covenants,

---

[1] The record on appeal includes stipulated facts and exhibits which provide a sufficient basis for our review notwithstanding respondent's argument that the record is inadequate.

and restrictions (CC&R's), which included a provision requiring that any lease be in writing and that a copy be given to the Association's board of directors.

On December 10, 2009, the Dowlatshahis quitclaimed their condominium to Alexander Escandari, an attorney. The Dowlatshahis and Escandari also signed an "ownership transfer agreement." Escandari moved into the condominium with his family. The quitclaim deed was not recorded until December 2011. After the change in ownership, the Dowlatshahis made at least two payments of condominium fees.

The board requested on numerous occasions that the Dowlatshahis provide it with a copy of "the lease." The Dowlatshahis never did so. They retained Escandari to deal with the board. He informed the board that there was no lease. The board invited the Dowlatshahis to meetings to discuss the matter. They declined to appear.

By letter to the board dated March 29, 2010, Escandari stated that "in accordance with *public records*, Mr. and Mrs. Dowlatshahi remain the owners of this property." (Italics added.)[2]

On July 22, 2010, the board gave the Dowlatshahis notice that a hearing was scheduled for August 17, 2010, to determine whether they should be fined for failing to provide a copy of "the lease." Escandari requested a continuance of the hearing, and the board rescheduled the hearing for September 21, 2010. On August 23, 2010, Escandari requested another continuance. The board denied the request. The Dowlatshahis did not appear at the hearing. The board "heard evidence" and found that the Dowlatshahis had violated the CC&R's by not providing a copy of "the lease." The board imposed a fine of $1,000 on the Dowlatshahis. According to the Association, the board subsequently imposed another $1,000 fine on the Dowlatshahis for the same reason.

---

[2] It may be that this statement was made and the quitclaim deed not recorded because the Dowlatshahis were in danger of foreclosure on their mortgage, Escandari did not have sufficient credit to obtain a mortgage on the condominium, Escandari was paying the Dowlatshahis' mortgage secretly, and no one wanted the bank to find out.

3

On November 9, 2010, the Dowlatshahis filed a complaint in the trial court, naming the Association as a defendant. In essence, the complaint sought an award of damages based on the board's alleged harassment of the Dowlatshahis. The complaint eventually was whittled down by demurrers, with the last remaining cause of action dismissed voluntarily.

Meanwhile, the Association filed a cross-complaint against the Dowlatshahis. The jist of the cross-complaint was the Dowlatshahis' failure to provide the board with a copy of "the lease." The Association originally sought recovery of $13,000 in fines, but dismissed its claims to all but $2,000 before trial.

On June 18, 2012, the cross-complaint was tried to the court. On June 27, 2012, the trial court entered judgment in favor of the Association, awarding it $2,000. The judgment provided in part: "The [Dowlatshahis'] defense is a legal one: [They] were correct when they stated (through their attorney Escandari) that there was no lease, because the quitclaim deed they signed is not a lease. Since there was no lease to produce, they contend, they [cannot] be found to have violated a provision of the CC&R's requiring them to produce a lease.

"The court is not convinced. The [Dowlatshahis] knew full-well what the [Association] was requesting: pursuant to the CC&R's, the [Association] had both the right and need to know if the [Dowlatshahis'] unit had been sold, transferred or leased to another person. The [Dowlatshahis] do not dispute that the [Association] had legitimate reasons—including security and safety—for requiring this information. The [Dowlatshahis] did not provide this information; in fact they (through their attorney Escandari) lied to the [Association] in their March 29, 2010 letter . . . . The [Dowlatshahis] were aware of this lie—and that they and Escandari were defrauding the [Association]—but chose to do nothing to correct the situation.

"The [Dowlatshahis] were given numerous opportunities to comply with the CC&R's by informing the [Association]—either in writing or in person at a Board meeting—that the property had been quitclaimed to Escandari. The [Dowlatshahis]

4

chose not to. Rather, the [Dowlatshahis] either conspired with Escandari—or decided to aid and abet Escandari—in deceiving the [Association]."

On August 24, 2012, the Dowlatshahis filed a notice of appeal from the judgment, attaching a copy of the judgment entered June 27, 2012.

After the entry of judgment, the Association filed a motion for attorney fees based on a "prevailing party" provision in the CC&R's. On September 7, 2012, the trial court filed an order awarding the Association $63,910 in attorney fees. The Dowlatshahis did not file a notice of appeal from the order awarding fees, and their prior notice of appeal did not refer to attorney fees.

At oral argument, counsel for the Association argued that this court need not reverse the award of attorney fees because it would not survive reversal of the underlying judgment.

## II

## DISCUSSION

The primary question before us is whether the judgment is supported by substantial evidence. Based on undisputed evidence, we conclude it is not. We also conclude that the trial court's award of attorney fees does not survive the reversal of the underlying judgment. The Association may not recover the fees awarded by the trial court in connection with the reversed judgment.

We review the judgment to determine whether it is supported by substantial evidence. Under the substantial evidence test, "'[t]he power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted,' to support the trial court's findings. . . . 'We must therefore view the evidence in the light most favorable to the prevailing party, giving [the Association] the benefit of every reasonable inference and resolving all conflicts in [its] favor . . . .'" (*Estate of Leslie* (1984) 37 Cal.3d 186, 201, citations omitted.)

"The interpretation of CC&R's is governed by the rules for interpreting contracts." (*Bear Creek Planning Committee v. Ferwerda* (2011) 193 Cal.App.4th 1178, 1183.) "We interpret [a contract] . . . in light of [its] plain meaning. . . . Under the plain meaning

5

rule, courts give the words of the contract . . . their usual and ordinary meaning. . . . '[W]e interpret the words in their ordinary sense, according to the plain meaning a layperson would attach to them.'" (*Valencia v. Smyth* (2010) 185 Cal.App.4th 153, 162, citations omitted.)

## A.  Occupancy by Lease or Quitclaim Deed

Under the CC&R's, a "lease" must be in writing, and the board is entitled to a copy of it.  A "lease" is defined as a "contract by which a rightful possessor of real property conveys the right to use and occupy the property in exchange for consideration, usu. rent."  (Black's Law Dict. (9th ed. 2009) p. 970, col. 2.)  Another definition is that a "lease" is a "contract by which one conveys real estate . . . for a specified term and for a specified rent."  (Merriam Webster's Collegiate Dict. (10th ed. 1995) p. 663, col. 1.)

The Dowlatshahis transferred their interest in the condominium to Escandari by executing a quitclaim deed.  That type of deed "conveys a grantor's complete interest or claim in certain real property but . . . neither warrants nor professes that the title is valid." (Black's Law Dict., *supra*, at p. 477, col. 1.)  It is "a legal instrument used to release one person's right, title, or interest to another without providing a guarantee or warranty." (Merriam Webster's Collegiate Dict., *supra*, at p. 960, col. 1.)

Occupancy by lease differs significantly from occupancy by quitclaim deed in that a quitclaim deed confers title or ownership on a grantee; a lease confers only temporary use and possession on a lessee.  In practical terms, a grantee under a quitclaim deed has a panoply of rights in the property that a lessee does not have, as the lessee's rights generally are limited to the right to possess for a specified term.

The Association counters that "a lease is nothing other than an instrument by which one is granted, upon stated terms and conditions, the right to occupy a parcel of land to the exclusion of the grantor."  (*Bachenheimer v. Palm Springs etc. Corp*. (1953) 116 Cal.App.2d 580, 591, italics omitted.)  As the Association sees it, the transaction between the Dowlatshahis and Escandari involved a "lease" as defined in *Bachenheimer*.

We disagree.  *Bachenheimer*'s definition of "lease" does not encompass the

6

quitclaim deed in the present case.  Indeed, if the Association's definition were accepted, most or all conveyances of title would fall within the definition of a "lease."

We need not stretch the concept of judicial notice to say that, in Los Angeles, the board of directors of a homeowners association understands the difference between a quitclaim deed and a lease.  Nevertheless, in the present case, the board asked the Dowlatshahis specifically and only for a copy of "the lease."  After the board was told no lease existed, it would have been reasonable for the board to ask whether Escandari's occupancy was based on something other than a lease.  Instead, the board kept asking the same question and receiving the same answer.

Of course, in responding to the board's inquiries, the Dowlatshahis could have volunteered that they had quitclaimed the property to Escandari.  But the Association has not cited any authority for the proposition that the Dowlatshahis had a duty to provide information outside the scope of the board's question.

## B.    The Association's Position

We acknowledge that the trial court made several findings adverse to the Dowlatshahis and Escandari.  For example, Escandari, while representing the Dowlatshahis, sent the board a letter on March 29, 2010, saying that "in accordance with *public records*, Mr. and Mrs. Dowlatshahi remain the owners of this property."  (Italics added.)  That was misleading, if not false.[3]

However, the trial court's adverse findings do not affect the undisputed core facts. The Dowlatshahis never leased the condominium.  The CC&R's required the Dowlatshahis to provide the board with a lease, not a quitclaim deed.  The Dowlatshahis did not have any duty to provide the nonexistent lease or a quitclaim deed that was not required by the CC&R's.  They cannot be liable for failure to fulfill a duty they did not have.  The judgment awarding the Association $2,000 therefore must be reversed.

---

[3] The Dowlatshahis are now suing Escandari for legal malpractice in connection with his representation of them in this dispute.

We reject the Association's contention that the Dowlatshahis were estopped to "deny they were the owners of the [condominium] at all times until the quitclaim deed was recorded." The doctrine of estoppel is codified in Evidence Code section 623, which provides: "Whenever a party has, by his own statement or conduct, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he is not, in any litigation arising out of such statement or conduct, permitted to contradict it."

We fail to see how the Dowlatshahis' denials of the existence of a lease constituted an intentional representation that they were still the owners. Nor was it a representation that a lease existed. Nor is there any indication the Dowlatshahis intended to lead the Association to continue to insist that they produce the lease. Moreover, the Association does not explain how it would have benefited from a finding that the Dowlatshahis owned the condominium until the quitclaim deed was filed. That would not have transformed the quitclaim deed into a lease or imposed on the Dowlatshahis a duty to turn over a nonexistent lease or a quitclaim deed they were not required by the CC&R's to produce. Finally, the only action the Association took in reliance on the Dowlatshahis' failure to disclose the quitclaim deed was to keep on demanding a copy of the lease after being told one did not exist. This cannot be characterized as an action taken in reasonable reliance upon the Dowlatshahis' conduct.

To prevail on its cross-complaint, the Association had to prove that (1) the Dowlatshahis leased the condominium to Escandari, (2) the lease was in writing, and (3) the Dowlatshahis refused to give a copy to the board. To treat the Dowlatshahis as the owners of the condominium until the date the quitclaim deed was recorded would not help the Association prove any necessary element of its case.

## C.    Award of Attorney Fees

The Dowlatshahis' failure to appeal the trial court's award to the Association of attorney fees does not mean that the award of attorney fees stands despite reversal of the underlying judgment.

When a party fails to appeal an award of attorney fees made after the entry of judgment, an appellate court has no jurisdiction to review the award. (*Allen v. Smith*

8

(2002) 94 Cal.App.4th 1270, 1284.)  "However, this does not mean that an award of attorney fees to the party prevailing stands after reversal of the judgment.  'An order awarding costs falls with a reversal of the judgment on which it is based.'  [Citations.] '[T]he successful party is never required to pay the costs incurred by the unsuccessful party.'  [Citation.]  After reversal of a judgment 'the matter of trial costs [is] set at large.' [Citation.]  Although [the reviewing court] cannot reverse the order granting costs and fees, the trial court should do so on remand."  (*Ibid.*)

### III

### DISPOSITION

The judgment is reversed.  The trial court is directed to enter judgment in favor of Reza Dowlatshahi and Soraya Dowlatshahi.  The parties are to bear their own costs on appeal.

NOT TO BE PUBLISHED.


MILLER, J.*

We concur:


ROTHSCHILD, Acting P. J.


CHANEY, J.

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.