Filed 2/26/21  Ramos v. Wallahan CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| JONATHAN RAMOS et al.,<br><br>    Plaintiffs and Appellants,<br>v.<br>WILLIAM WALLAHAN,<br><br>    Defendant and Respondent. | A157085<br><br>(Sonoma County<br>Super Ct. No. SCV-260482) |

Plaintiffs Jonathan Ramos and Meaghan Creedon appeal from an order granting in part defendant William Wallahan's post-judgment motion for attorney fees pursuant to Civil Code section 1717.[1]  Plaintiffs argue the order should be reversed because the requirements for an award of fees under section 1717 were not met.  We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Creedon and Ramos are husband and wife.  In August 2017, they sued defendant regarding a residential property located in Santa Rosa, California.  The complaint alleged that the parties had entered into the following oral option agreement:  defendant would purchase the property and hold title for up to two years, during which time plaintiffs would occupy the property.  At the two-year mark, plaintiffs would be entitled to purchase the

---

[1]    Further statutory references are to the Civil Code.

property at the same price defendant paid, and defendant would receive a $50,000 option payment. Creedon served as defendant's real estate agent. Defendant purchased the property in August 2015, and plaintiffs subsequently moved onto the property.

The complaint further alleged the following: In August 2015, Ramos requested a written agreement to memorialize the terms of the oral agreement. The parties then drafted a written agreement that was signed by Ramos and defendant, but defendant refused to provide plaintiffs with a copy. In February 2017, defendant provided a copy of the signed written agreement containing handwritten interlineated terms that were different from those in the oral agreement and the original signed agreement. In March 2017, defendant served a 60-day notice to terminate plaintiffs' tenancy.

Based on the foregoing allegations, the complaint asserted six causes of action: (1) breach of oral agreement; (2) breach of written contract; (3) declaratory relief; (4) permanent and preliminary injunction; (5) fraud; and (6) breach of the covenant of good faith and fair dealing. The breach of written contract claim was voluntarily dismissed prior to trial.

On the oral agreement claim, plaintiffs alleged that defendant breached the oral agreement by failing to sell the property to plaintiffs as required under their oral agreement and reflected in their original signed written agreement. On the declaratory relief claim, plaintiffs sought a judicial declaration of their right to purchase the property "pursuant to the oral and written option agreements between the parties[.]" On the injunction claim, plaintiffs sought to enjoin defendant from removing plaintiffs from the property, on the grounds that defendant denied the existence of the oral agreement, denied the terms of the written agreement, and unilaterally

modified the written agreement. On the fraud claim, plaintiffs alleged that they "entered into the oral and written agreements" in reliance on defendant's promises. On the good faith and fair dealing claim, plaintiffs alleged that the written agreement "contains an implied covenant of good faith and fair dealing" that required defendant to "perform the terms and conditions of the written agreement in addition to performing according to the oral agreements." In their prayer for relief, plaintiffs sought "attorneys fees according to law" without specifying a source for the request.

Defendant filed a cross-complaint against plaintiffs and the real estate company that employed Creedon.[2] The cross-complaint asserted three causes of action: (1) professional negligence; (2) breach of fiduciary duty; and (3) declaratory relief. The professional negligence and fiduciary duty claims were voluntarily dismissed prior to trial. The declaratory relief claim, asserted only against Ramos and Creedon, sought a judicial declaration of defendant's rights and obligations in the property vis-à-vis the rights and obligations claimed by plaintiffs, and a declaration that plaintiffs are not entitled to purchase the property and have no right, title, or interest in the property. In his prayer for relief, defendant sought "reasonable attorneys' fees" without specifying a source for the request.

The cross-complaint attached a seven-page document titled "Residential Lease With Option to Purchase," which defendant alleged was the written option agreement between the parties. The document includes pre-printed language as well as handwritten text. The final page of the document includes the signatures of Ramos and defendant. While Creedon's initials appear to be included on the first four pages, her signature does not appear on the final page. The sixth page of the document contains the

---

[2]     The real estate company is not a party to this appeal.

3

following pre-printed clause: "In any action, arbitration, or other proceeding involving a dispute between Buyer and Seller arising out of the execution of this Agreement or the sale, whether for tort or for breach of contract, and whether or not brought to trial or final judgment, the prevailing party will be entitled to receive from the other party a reasonable attorney fee, expert witness fees, and costs to be determined by the court or arbitrator(s)."

The matter proceeded to a jury trial, and the written agreement attached to the cross-complaint was received into evidence. The trial court dismissed plaintiffs' cause of action for breach of the covenant of good faith and fair dealing, and the jury found in favor of defendant on plaintiffs' causes of action for oral agreement and fraud.[3] The trial court also ruled for defendant on his cross-complaint for declaratory relief, determining that Ramos and Creedon had no right, title, or interest of any kind in the property, "whether arising under the written 'Lease Option' or any other alleged written or oral agreement." Thus, the court found that defendant was the prevailing party on "all claims and causes of action[.]"

Following entry of judgment, defendant filed a memorandum of costs seeking $101,519.70. Plaintiffs moved to strike or tax the costs. The trial court granted plaintiffs' motion in part, and awarded defendant $94,055.30 in costs.[4]

---

[3]     On the oral agreement claim, the jury found the oral contract terms were not clear enough so that the parties could understand what each was required to do. On the fraud claim, the jury found that defendant made a promise to plaintiffs, but that he intended to perform the promise when he made it.

[4]     Plaintiffs' notice of appeal identified both the costs order and the attorney fees order. In their opening brief, however, plaintiffs explain that their appeal of the costs order has been withdrawn.

4

Defendant then filed a motion pursuant to section 1717 seeking $420,265.47 in attorney fees, based on the attorney fees provision in the written agreement. The trial court granted the motion with an hourly rate reduction, awarding defendant $340,865.22 in fees. The trial court found that section 1717 was applicable because the action "involved" the written agreement containing the attorney fees provision. It also found that defendant was not precluded from recovering fees despite plaintiffs' contention that the written agreement was unenforceable. It reasoned that (1) plaintiffs never denied that Ramos signed the written agreement containing the attorney fees provision; and (2) while plaintiffs alleged that defendant had modified some of the handwritten terms in the written agreement, they never alleged that he altered the pre-printed attorney fees provision.

Plaintiffs appealed the attorney fees order.[5]

## DISCUSSION

In this appeal, plaintiffs argue that the attorney fees order should be reversed because the requirements for an award under section 1717 were not met. The parties disagree about the applicable standard of review: plaintiffs contend de novo review applies, whereas defendant contends the order should be reviewed for abuse of discretion. " 'On review of an award of attorney fees after trial, the normal standard of review is abuse of discretion. However, de novo review of such a trial court order is warranted where the determination of whether the criteria for an award of attorney fees and costs in this context have been satisfied amounts to statutory construction and a question of

---

[5] In his brief, defendant notes that he filed a cross-appeal of the attorney fees order to challenge the hourly rate reduction, but that the cross-appeal has been withdrawn.

5

law.' " (*Connerly v. State Personnel Bd.* (2006) 37 Cal.4th 1169, 1175, quoting *Carver v. Chevron U.S.A., Inc.* (2002) 97 Cal.App.4th 132, 142.) As this appeal concerns whether section 1717's requirements have been satisfied, our review is de novo.

Section 1717, subdivision (a), provides: "In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs." This statute has been interpreted to ensure "full mutuality of remedy" for attorney fee claims, meaning that a party is entitled to fees " 'even when the party prevails on grounds the contract is inapplicable, invalid, unenforceable or nonexistent, if the other party would have been entitled to attorney's fees had it prevailed.' " (*Hsu v. Abbara* (1995) 9 Cal.4th 863, 870 (*Hsu*), quoting *Bovard v. American Horse Enterprises, Inc.* (1988) 201 Cal.App.3d 832, 842.)

Section 1717 sets forth three criteria that must be satisfied for an award of attorney fees. First, the contract must "specifically provide[]" for attorney fees incurred to enforce that contract. (§ 1717, subd. (a).) Second, the action must be "on" the contract. (*Ibid.*) Third, there must be a "prevailing party" on the contract. (*Ibid.*) We address each criterion in turn.

### A. Provision for Attorney Fees

Section 1717's first criterion requires us to answer the following question: was there a written agreement specifically providing for attorney fees incurred to enforce that agreement? The parties correctly agree that this answer is *not* dependent on the enforceability of the written agreement as a

6

whole.  (*Manier v. Anaheim Business Center Co.* (1984) 161 Cal.App.3d 503, 505–506 (*Manier*).)  Instead, we look to whether a written agreement "contains a facially valid and enforceable attorney fee provision" that can satisfy this criterion.  (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 608 (*Santisas*).)

Here, the written agreement attached to the cross-complaint contains the following pre-printed attorney fees provision:  "In any action, arbitration, or other proceeding involving a dispute between Buyer and Seller arising out of the execution of this Agreement or the sale, whether for tort or for breach of contract, and whether or not brought to trial or final judgment, the prevailing party will be entitled to receive from the other party a reasonable attorney fee, expert witness fees, and costs to be determined by the court or arbitrator(s)."  These terms clearly provide for attorney fees incurred to enforce the agreement, which was signed by both Ramos and defendant.  And as the trial court noted, while plaintiffs alleged some modification of an earlier written agreement with unagreed-to handwritten terms, they never alleged that defendant altered the pre-printed attorney fees provision.  Accordingly, we conclude that there is a "facially valid and enforceable" attorney fee provision in a written agreement between the parties.  (*Santisas*, *supra*, 17 Cal.4th at p. 608.)

Plaintiffs' arguments to the contrary are unpersuasive.  Specifically, they contend that the attorney fees provision is unenforceable because plaintiffs did not manifest any intention to be bound by it, highlighting the fact that the written agreement was not signed by Creedon.  But this signature issue goes to the enforceability of the written agreement as a whole, not the specific attorney fees provision, and thus is not determinative here.  (*Manier*, *supra*, 161 Cal.App.3d at pp. 505–506.)

In any event, the written agreement *was* signed by Ramos, Creedon's husband.  Plaintiffs do not directly address the authority cited by defendant that a husband's signature on a contract is binding on his spouse, absent evidence showing intent to be bound only if signed by all parties.  (E.g., *Angell v. Rowlands* (1978) 85 Cal.App.3d 536, 543.)  Instead, plaintiffs contend that the language of the attorney fees provision—the phrase "arising out of the execution of this Agreement"—requires that the agreement be fully signed.  Plaintiffs cite no authority for this proposition, which we reject.  Considered in context, the phrase is reasonably understood as a description of the claims covered by attorney fees provision (*Santisas, supra*, 17 Cal.4th at p. 608), not as an express condition contemplating that the agreement be signed by all parties as a prerequisite to enforceability of the attorney fees provision.

Plaintiffs also contend that Ramos's signature is insufficient because there was trial testimony that Creedon considered the written agreement to be a "draft."  They concede, however, that none of this testimony is included in the record on appeal.  This deficiency of the appellate record is fatal to the contention.  (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295–1296 [appellant challenging fee award has an affirmative obligation to provide an adequate record to assess error].)  In any case, this argument is also flawed because it goes to the enforceability of the written agreement as a whole, not the specific attorney fees provision.

Plaintiffs also argue this criterion cannot be met because the trial court failed to make a factual finding that the parties "*intended to be bound to the attorney fee clause.*"  In so contending, plaintiffs cite three decisions for the proposition that such a finding is necessary before an attorney fees provision may be considered within the scope of section 1717.  In *Mountain Air*

8

*Enterprises, LLC v. Sundowner Towers, LLC* (2017) 3 Cal.5th 744, 756 (*Mountain Air*), the California Supreme Court determined that the contract did contain an attorney fees clause, but that the assertion of an affirmative defense was not covered by the scope of the clause. In *R.W.L. Enterprises v. Oldcastle, Inc.* (2017) 17 Cal.App.5th 1019, 1027 (*RWL*), the appellate court concluded that the attorney fee award was erroneous because the relevant agreement did not contain an attorney fees provision and could not be construed together with another agreement that did provide for fees. In *Sessions Payroll Management, Inc. v. Noble Const. Co., Inc.* (2000) 84 Cal.App.4th 671, 680–681 (*Sessions*), the appellate court determined that an action brought by a third party beneficiary of a contract was not covered by the scope of the attorney fees provision. We are not persuaded.

In all three cases, the courts employed traditional rules of contract interpretation to determine whether there was an applicable attorney fees provision and if so, its scope: looking to the plain language of the terms, as well as their context, to give effect to the mutual intention of the parties. (*Mountain Air*, *supra*, 3 Cal.5th at p. 752; *RWL*, *supra*, 17 Cal.App.5th at p. 1026; *Sessions*, *supra*, 84 Cal.App.4th at pp. 680–681.) None of these cases indicates that a trial court must make a specific factual finding that the parties intended to be bound by the attorney fees provision before it can be enforced. Indeed, any such requirement would run afoul of section 1717's mutuality of remedy because a trial court could not make that finding while *also* finding that a contract was nonexistent. (E.g., *Balistreri v. Nevada Livestock Production Credit Assn.* (1989) 214 Cal.App.3d 635, 644 [explaining that fees may be awarded under section 1717 even though the court finds that no valid contract existed based on mutual mistake].) We thus decline to recognize such a requirement here.

9

In sum, the written agreement specifically provides for attorney fees incurred to enforce that agreement and thus satisfies the first criterion on section 1717.

## B.    Action on the Contract

The second criterion of section 1717 requires us to answer the following question:  is the action on the contract?  "California courts construe the term 'on a contract' liberally."  (*Turner v. Schultz* (2009) 175 Cal.App.4th 974, 979 (*Turner*).)  As long as the action "involves" a contract under which one of the parties would be entitled to recover attorney fees if it prevails in the action, the criterion is satisfied.  (*Ibid.*)

Plaintiffs argue this criterion cannot be met by their request for "attorneys fees according to law" in their complaint's prayer for relief.  We agree that a generic attorney fees prayer request is not enough to establish entitlement to fees under section 1717.  (*Bear Creek Planning Committee v. Ferwerda* (2011) 193 Cal.App.4th 1178, 1188.)  "In determining whether an action is 'on the contract' under section 1717, the proper focus is not on the nature of the remedy, but on the basis of the cause of action."  (*Kachlon v. Markowitz* (2008) 168 Cal.App.4th 316, 347 (*Kachlon*).)

Plaintiffs also argue that entitlement to section 1717 attorney fees cannot be premised on their cause of action for written agreement, which they dismissed prior to trial.  Again, we agree.  Subdivision (b)(2) of section 1717 provides that where, as here, "an action has been voluntarily dismissed . . . there shall be no prevailing party for purposes of this section."  In *Santisas*, the California Supreme Court construed this subdivision as overriding or nullifying conflicting contractual provisions, such as the provision in the written agreement here that expressly allowed for recovery of

10

fees "whether or not brought to trial or final judgment[.]" (*Santisas, supra*, 17 Cal.4th 599 at p. 617.)

Accordingly, we must decide whether plaintiffs' remaining causes of action "involve" the contract—here, the written agreement containing the attorney fees provision. (*Turner, supra*, 175 Cal.App.4th at p. 979.) A cause of action "involves" a contract when it "arises out of, is based upon, or relates to an agreement by seeking to define or interpret its terms or to determine or enforce a party's rights or duties under the agreement[.]" (*Douglas E. Barnhart, Inc. v. CMC Fabricators, Inc.* (2012) 211 Cal.App.4th 230, 242 (*Barnhart*).) Here, plaintiffs' oral contract claim alleged that defendant had breached the oral agreement by modifying the written agreement. These allegations make clear that the claim arises from the oral agreement, not the written agreement.

Plaintiffs' good faith and fair dealing claim, however, alleged that the written agreement "contains an implied covenant of good faith and fair dealing" that required defendant to "perform the terms and conditions of the written agreement," *in addition* to his alleged obligations under the oral agreement. By seeking to enforce defendant's purported obligations under the written agreement, the good faith and fair dealing cause of action "involve[d]" the written agreement. (*Barnhart, supra*, 211 Cal.App.4th at p. 242.)

Plaintiffs' causes of action for an injunction and declaratory relief similarly sought to enforce the terms of the original signed written agreement and plaintiffs' rights thereunder. The injunction claim was brought on the basis that defendant denied the existence of the oral agreement, denied the terms of the original signed written agreement, and unilaterally modified that written agreement. The declaratory relief claim sought to enforce

11

plaintiffs' right to purchase the property "pursuant to the oral and written agreements between the parties[.]" Accordingly, the causes of action for injunction and declaratory relief also "involve[d]" the written agreement. (*Barnhart*, *supra*, 211 Cal.App.4th at p. 242; *Kachlon*, *supra*, 168 Cal.App.4th at p. 348 [concluding that causes of action for declaratory and injunctive relief were " 'on the contract' " because they sought to enforce its terms].)

Moreover, defendant's cross-complaint also involved the written agreement, albeit as allegedly modified in plaintiffs' view. The cross-complaint attached the written agreement and repeatedly referenced it in the allegations. Specifically, defendant's declaratory relief cause of action was an effort to dispel any claimed right by plaintiffs to purchase the property, as well as any obligation of defendant to sell it, under the terms of the written agreement. (*Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC* (2008) 162 Cal.App.4th 858, 895 [determining that the cross-complaint was on the contract for purposes of section 1717 where it attached the agreement and relied heavily on its terms to establish claims].)

Given that plaintiffs and defendant both asserted contractual causes of action that involved the written agreement, we conclude the action was on the contract for the purposes of section 1717.

### C.  Prevailing Party on the Contract

Section 1717's third criterion requires us to answer the following question: is defendant the party that prevailed on the contract? Section 1717 defines "the prevailing party on the contract" as "the party who recovered a greater relief in the action on the contract." (§ 1717, subd. (b)(1).) Accordingly, "[w]hen a party obtains a simple, unqualified victory by completely prevailing on or defeating all contract claims in the action and the contract contains a provision for attorney fees, section 1717 entitles the

successful party to recover reasonable attorney fees incurred in prosecution or defense of those claims." (*Scott Co. v. Blount, Inc.* (1999) 20 Cal.4th 1103, 1109; see *Santisas*, *supra*, 17 Cal.4th 599 at p. 615 [addressing mutuality of remedy under § 1717].)

Here, defendant obtained an unqualified win on "all claims and causes of action." Defendant prevailed completely on plaintiffs' contractual (and non-contractual) causes of action, and on his declaratory relief cause of action in the cross-complaint. Consequently, defendant has satisfied the third and final criterion of section 1717.

Plaintiffs' arguments to the contrary largely recycle their earlier arguments that: (1) plaintiffs would not have been entitled to fees had they prevailed on their claims because the agreement was not fully executed; and (2) the trial court did not make a supposedly requisite factual finding that the parties intended to be bound to the attorney fee clause. We rejected these arguments above and reject them again here.

Plaintiffs also argue they would not have been entitled to fees because their discovery responses to form interrogatory 50.1 stated that "[t]here was no written agreement." But after serving these responses, plaintiffs continued to assert causes of action that involved the two versions of the written agreement (both of which contained the pre-printed attorney fees clause) and that sought to enforce the parties' rights and obligations as purportedly evidenced in those agreements. Contrary to plaintiffs' assertions, had they prevailed on these causes of action, they would have been entitled to attorney fees under the written agreement.

In sum, we conclude that defendant was the party that prevailed on the contract and thus the third criterion of section 1717 is satisfied.

### D. Apportionment

Plaintiffs dedicate only one sentence of their opening brief to argue that, even if defendant was entitled to attorney fees under section 1717, the trial court failed "to apportion what fees, if any, were for non-contract claims." As explained in *Santisas*, "[i]f an action asserts both contract and tort or other noncontract claims, section 1717 applies only to attorney fees incurred to litigate the contract claims." (*Santisas*, *supra*, 17 Cal.4th at p. 615.) Accordingly, once a trial court determines that a party is entitled to attorney fees, it may apportion fees incurred in the litigation between contract and non-contract claims.

Apportionment, however, "rests within the court's sound discretion." (*Carver v. Chevron U.S.A., Inc.* (2004) 119 Cal.App.4th 498, 505 (*Carver*).). Indeed, attorney fees need not be apportioned when (1) they are "incurred for representation on an issue common to both a cause of action in which fees are proper and one in which they are not allowed"; or (2) the claims "are so intertwined that it would be impracticable, if not impossible, to separate the attorney's time into compensable and noncompensable units." (*Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124, 129–130; *Bell v. Vista Unified School Dist.* (2000) 82 Cal.App.4th 672, 687.) Plaintiffs bear the burden on appeal to establish that the trial court's discretion on apportionment "was clearly abused and a miscarriage of justice resulted." (*Carver*, *supra*, 119 Cal.App.4th at p. 505.) Because plaintiffs provide no specific argument or authority on the issue, we conclude they failed their burden.

Moreover, section 1717 does not preclude an award of attorney fees for tort or other noncontract claims when the award is based on the agreement between the parties. "If a contractual attorney fee provision is phrased broadly enough, as this one, it may support an award of attorney fees to the

14

prevailing party in an action alleging both contract and tort claims: '[P]arties may validly agree that the prevailing party will be awarded attorney fees incurred in any litigation between themselves, whether such litigation sounds in tort or in contract.' " (*Santisas*, *supra*, 17 Cal.4th at p. 608.) Here, as in *Santisas*, the attorney fees provision in the written agreement covers any dispute between the parties "arising out of the execution of this Agreement or the sale, whether for tort or for breach of contract."

In sum, plaintiffs have not shown the trial court abused its discretion in declining to apportion what fees, if any, were for non-contract or tort claims.

## DISPOSITION

The order of the trial court granting defendant an award of attorney fees in the amount of $340,865.22 is affirmed. Defendant shall recover his costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1)–(2).)

15

                                                                     _____

                                                                   Fujisaki, Acting P.J.

WE CONCUR:


_____

Jackson, J.


_____

Wiseman, J.*


A157085

---

\*      Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

16